strUNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

C.S. by her Next Friend,
ADAM STROUB,                        Case No. 4:22-cv-10993-TGB-EAS
                                    Hon. Terence E. Berg
        Plaintiff,                  Magistrate Judge
                                        Elizabeth A. Stafford

v.

CRAIG MCCRUMB et al.,

        Defendants.
_____/


**BRIEF IN SUPPORT OF PLAINTIFFS'**
**<u>MOTION FOR SUMMARY JUDGMENT</u>**

## <u>STATEMENT OF QUESTION PRESENTED</u>

1.    Whether there is no genuine issue of material fact for trial that Defendants' act of forbidding C.S. from wearing her hat in school because of its message violated her First Amendment rights, as applied to the states via the 14th Amendment.

## <u>CONTROLLING/MOST APPROPRIATE AUTHORITY</u>

*Tinker v. Des Moines Independent Community School District,* 393 U.S. 508, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969) (public school children have First Amendment rights in the school setting that cannot be curtailed absent a reasonable forecast of material and substantial disruption).

# **TABLE OF CONTENTS**

STATEMENT OF QUESTION PRESENTED .........................................1

CONTROLLING/MOST APPROPRIATE AUTHORITY ........................2

TABLE OF CONTENTS ......................................................................3

INDEX OF AUTHORITIES ..................................................................4

Introduction.......................................................................................5

Statement of Material Facts ...............................................................5

Standard for Granting Summary Judgment .........................................9

Argument...........................................................................................9

   I.  There is no genuine issue of material fact for trial that Defendants violated C.S.'s First Amendment rights. ...............................................9

    A.   Pertinent legal principles...........................................................9

    B.   The law applied to this case.....................................................17

Conclusion ......................................................................................25

# INDEX OF AUTHORITIES

**Cases**

*Barr v. Lafon,* 538 F.3d 554 (6th Cir. 2008)..........................................14, 16

*Bethel School District v. Fraser,* 478 U.S. 675 (1986)..................11, 12, 13

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)....................................9

*Defoe v. Spiva,* 625 F.3d 324 (6th Cir. 2010)............................................13

*Gitlow v. New York,* 268 U.S. 652 (1925)..................................................10

*Hazelwood School District v. Kuhlmeier,* 484 U.S. 260 (1988)... 11, 12, 13

In *Mahanoy Area School District v. B.L.,* 594 U.S. ___, 141 S.Ct. 2038, 210 L.Ed.2d 403 (2021) .........................................................................12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585 (1986) ...........................................................................................................9

*Morse v. Frederick,* 551 U.S. 393 (2007) ...........................................12, 13

*N.J. v. Sonnabend,* 37 F.4th 412 (7th Cir. 2022) ...............................15, 17

*Norris ex rel. A.M. v. Cape Elizabeth Sch. Dist.*, 969 F.3d 12, 25 (1st Cir. 2020) .......................................................................................................16

*Nuxoll v. Indian Prairie School District # 204,* 523 F.3d 668 (7th Cir. 2008) ...............................................................................................14, 16, 17

*Tinker v. Des Moines Indep. Comm. Sch. Dist.,* 393 U.S. 508, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969) ................................................................... passim

*Zamecnik v. Indian Prairie School District # 204,* 636 F.3d 874 (7th Cir. 2011) ................................................................................................14, 17

**Statutes**

42 U.S.C. § 1983 ........................................................................................10

42 U.S.C. § 1988 ........................................................................................25

MCL § 2.22 .................................................................................................23

**Rules**

Fed. R. Civ. P. 56.........................................................................................9

Fed.R.Civ.Proc. 25.......................................................................................7

**Constitutional Provisions**

14th Amendment .........................................................................................10

First Amendment ................................................................................ passim

*Schoenecker v. Koopman,* 349 F.Supp.3d 745 (E.D. Wis. 2018).......21, 22

## Introduction

C.S. brings this action for violations of her First and 14th Amendment rights. C.S. is a student at Robert Kerr Elementary School ("RKES") in Durand, Michigan. On "Hat Day," when students were encouraged to wear hats, she wore a hat that depicted, *inter alia,* a rifle. Defendants, who are school officials at RKES and the Durand Area Schools, disallowed her from wearing the Hat. C.S. contends that the Hat was protected speech, and Defendants violated her free-speech rights when they disallowed the Hat.

## Statement of Material Facts

1.      Plaintiff C.S. is a student at Robert Kerr Elementary School ("RKES"), a public school operated by the Durand Area Schools in Durand, Shiawassee County, Michigan. Plaintiff's Fact Appendix ("PFA") 1, p. 4; PFA 2, p. 5.

2.      C.S. is currently in the 4th grade and was in the 3rd grade during the 2021-2022 school year. PFA 1, p. 4.

3.      C.S. appears in this case through her next friend, her father, Adam Stroub. PFA 3, p. 6.

4.     February 17, 2022 was "Hat Day" at RKES, on which students were encouraged by the school to wear hats.  PFA 4, p. 7.

5.     C.S. wore a baseball-style hat ("the Hat").  PFA 4, p. 14 and Exh. 2.

6.     The Hat was black and featured a white star, a white image of an AR-style rifle, and the words, "come and take it."  PFA 4, p. 14 and Exh. 2.

7.     The words, "come and take it," especially when used with an image of a star and some kind of weapon, are a common slogan to show support for the right to keep and bear arms.  PFA 3, pp. 27-28.

8.     The words, "come and take it," with a star and cannon make up the "Gonzalez flag," a symbol of resistance to the invasion by Mexico of the colony of Gonzalez, Texas during the Texas Revolution.  PFA 3, pp. 30-31.

9.     Defendant Michael Papanek ("Papanek") is the On Track Coach at RKES.  PFA 5, p. 5.

10.     Among Papanek's duties is administering discipline in the school.  PFA 5, pp. 5-6.

11.     Papanek saw C.S. at school on February 17, 2022, and noticed the Hat.  PFA 5, p. 7.

12.     Papanek believed the Hat may have been in violation of school policy, so he went to the office of Defendant Amy Leffel ("Leffel"), the then-principal of RKES,[1] to tell her about the Hat and to seek her advice.  PFA 5, pp. 7-8.

13.     Leffel has been replaced as Principal of RKES by Tanya Klount.  PFA 6, p. 4.

14.     In Leffel's office at the time of the conversation was Defendant Craig McCrumb, the superintendent of Durand Area Schools, and McCrumb was present for the conversation between Papanek and Leffel.  PFA 5. P. 7; PFA 2, p. 5; PFA 4, p. 27.

15.     Leffel and Papanek determined that Papanek should call C.S.'s parents and ask for a substitute hat.  PFA 4, p. 12.

16.     Papanek called C.S.'s home and ultimately spoke with Stroub.  PFA 5, pp. 11-12.

---

[1] Leffel no longer is the principal so she has been substituted automatically in her official capacity by her successor-in-office, Tanya Klont.  Fed.R.Civ.Proc. 25(d).  Leffel remains as a Defendant in her individual capacity.

17.   Papanek asked Stroub to provide an alternative hat for C.S., but Stroub declined to do so.  PFA 5, p. 12.

18.   Papanek and Leffel both claim to have told C.S. to remove the Hat and put it in her locker, but there is no dispute that one of them did so.  PFA 5, p. 13; PFA 4, p. 12.

19.   C.S. complied.  PFA 5, p. 13.

20.   Leffel testified that she as principal had discretion to interpret and enforce the school dress code, which states in pertinent part, "Anything printed on clothing must not be offensive in any way. The building principal/staff has the right to decide what is offensive, but some examples are: words/slogans that advertise illegal substances, words/slogans that are racially or religiously offensive, violence themes, vulgar or sexual innuendo, etc."  PFA 4, p. 18.

21.   Leffel deposed that she determined that the Hat was not "appropriate."  PFA 4, p. 19.

22.   In an email exchange with Stroub, on which McCrumb was copied, Leffel stated, "Weapons of any kind are not appropriate for students to wear in a school setting."  PFA 4, p. 14 and Exh. 1.

23.   Leffel deposed that she did not suspect C.S. of having

an *actual* weapon.  PFA 4, p. 15.

## Standard for Granting Summary Judgment

A party is entitled to summary judgment when the pleadings, depositions, discovery responses, and affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  The moving party bears the burden of showing the court that there is no genuine issue of material fact.  *Id.* at 323.  Once the moving party has made that showing, the opposing party must come forward with competent evidence of existence of a genuine fact issue (if any).  Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585 (1986).

## Argument

## I.   There is no genuine issue of material fact for trial that Defendants violated C.S.'s First Amendment rights.

### A.   Pertinent legal principles.

The First Amendment provides, in pertinent part, "Congress shall make no law … abridging the freedom of speech…."  The protections of the First Amendment are applied to state governments by the 14th

Amendment. *Gitlow v. New York,* 268 U.S. 652, 45 S.Ct. 625, 69 L.Ed. 1138 (1925).

42 U.S.C. § 1983 provides, in pertinent part, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State…, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…."

The landmark case for public school First Amendment issues is *Tinker v. Des Moines Indep. Comm. Sch. Dist.,* 393 U.S. 508, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969).  In *Tinker,* public school students were suspended from school after they wore black armbands to school as a protest against the Vietnam War.  The Supreme Court ruled that the First Amendment applies in public schools, famously observing, "It can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate."  393 U.S. at 506.  The Court ruled that in order to justify censoring speech, school officials "must be able to show that

10

[their] action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint." Instead, the Court ruled, student speech that has the potential to cause substantial disruption is not protected by the First Amendment. 393 U.S. at 509.

Since *Tinker,* the Supreme Court has further refined First Amendment jurisprudence in public schools. In *Bethel School District v. Fraser,* 478 U.S. 675, 106 S.Ct. 3159, 92 L.Ed. 2d 549 (1986), the Court considered indecent, lewd, and vulgar remarks made by a student during a school assembly on school grounds, and determined that *Tinker* does not extend to such speech.

In *Hazelwood School District v. Kuhlmeier,* 484 U.S. 260, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988), a student wrote an article about teen pregnancy in the school newspaper, and, with their permission, named girls in the school who had become pregnant. The school censored the article, and the Supreme Court ruled that something appearing in the school's newspaper, even though primarily written by students, bore the imprimatur of the school and people might perceive it to be school-sponsored speech. Such speech, the Court ruled, can be controlled by

the school.

In *Morse v. Frederick,* 551 U.S. 393, 127 S.Ct. 2618, 168 L.Ed.2d 290 (2007), a school disciplined a student for displaying a banner at a school activity that read "BONG HITS 4 JESUS."  The Supreme Court ruled that public schools may censor speech that promotes illegal drug use.

Those rulings notwithstanding, *Tinker*'s central holding remains good law.  In *Mahanoy Area School District v. B.L.,* 594 U.S. ___, 141 S.Ct. 2038, 210 L.Ed.2d 403 (2021), the Court recently reiterated that students "do not shed their constitutional rights to freedom of speech or expression even at the school house gate."  The Court reminded:

> [There are T]hree specific categories of student speech that schools may regulate in certain circumstances:  (1) indecent, lewd, or vulgar speech uttered during a school assembly on school grounds; (2) speech, uttered during a class trip, that promotes illegal drug use; and (3) speech that others may reasonably perceive as bearing the imprimatur of the school, such as that appearing in a school-sponsored newspaper.

Thus, if the circumstances of *Bethel, Hazelwood,* or *Morse* are not present, it is a *Tinker* case.

The 6th Circuit has considered several public school First Amendment cases,  with one of the more thorough discussions being

*Defoe v. Spiva,* 625 F.3d 324 (6th Cir. 2010). The Court in *Defoe* recounted the history of *Tinker, Bethel,* and *Hazelwood* (the *Defoe* case does not mention *Morse,* but the present case clearly has nothing to do with illegal drug use). *Defoe* observed that the *Tinker-Bethel-Hazelwood* trilogy "yields three principles." 625 F.3d at 332. Those principles are 1) under *Bethel* a school may categorically prohibit vulgar, lewd, indecent or plainly offensive speech; 2) under *Hazelwood* a school has limited authority to censor school sponsored speech in a manner consistent with pedagogical concerns; and 3) the *Tinker* standard applies to all other student speech and allows regulation "***only*** when the school reasonably believes that the speech will substantially and materially interfere with schoolwork or discipline." *Id.* (emphasis added).

The *Defoe* Court applied these principles and determined that a student wearing clothing that bears the image of the Confederate flag is "pure speech" and *Fraser* and *Hazelwood* do not apply. *Id.* The Court concluded that *Tinker* governs in such cases, and "the inquiry in this case focuses on whether the record demonstrates any facts which might reasonably have led school authorities to forecast substantial disruption

of or material interference with school activities." *Id.*

The 6th Circuit came to a similar conclusion in *Barr v. Lafon,* 538 F.3d 554 (6th Cir. 2008), another Confederate flag case. In *Barr,* the Court ruled, "*Tinker* governs the instant case because by wearing clothing depicting images of the Confederate flag students engage in pure speech not sponsored by the school." 538 F.3d at 564.

The 7th Circuit has taken a similar approach. In *Nuxoll v. Indian Prairie School District # 204,* 523 F.3d 668 (7th Cir. 2008), the Court applied the *Tinker* test to a T-shirt that said, "be happy, not gay." The Court affirmed an injunction and damages against the school for banning the shirt, finding that the shirt had only a "speculative … slight tendency to provoke [harassment of homosexual students.]" 523 F.3d at 676. The case went back to the 7th Circuit to consider a permanent injunction as *Zamecnik v. Indian Prairie School District # 204,* 636 F.3d 874 (7th Cir. 2011). In *Zamecnik,* the Court said the school could censor the shirt only where it "might reasonably lead school officials to forecast substantial disruption. Such facts might include a decline in students' test scores, an upsurge in truancy, or other symptoms of a sick school…." *Id.*

More recently and even more on point, in *N.J. v. Sonnabend,* 37 F.4th 412 (7th Cir. 2022), the Seventh Circuit considered a case where a high-school student wore a T-shirt to school that depicted a handgun and school officials told the student he could not wear the shirt. The 7th Circuit said, "*Tinker* provides the legal standard: restrictions on student speech are constitutionally permissible if school officials reasonably forecast that the speech would materially and substantially disrupt the work and discipline of the school or invade the rights of others." 37 F.4th at 416.

Just like in the present case, in *N.J.* the principal said clothing depicting firearms was "inappropriate." *Id.* at 421. The 7th Circuit noted, "An undifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression." *Id.* at 423, *citing Tinker*. The Court remanded the case to the district court and emphasized, "school officials must present facts that might reasonably have led school authorities to forecast substantial disruption of or material interference with school activities or the invasion of the rights of others." *Id.* at 426. "[M]ere speculation won't do," the court noted." *Id.* (citation omitted). "Rather, school officials must present facts that

15

might reasonably have led school authorities to forecast substantial disruption of or material interference with school activities." *Id.* (cleaned up), citing *Tinker*, 393 U.S. at 514 and *Nuxoll*, 523 F.3d at 673. "It's an objective inquiry, and *Tinker* places the burden of justifying student-speech restrictions squarely on school officials." *Id.*, citing *Norris ex rel. A.M. v. Cape Elizabeth Sch. Dist.*, 969 F.3d 12, 25 (1st Cir. 2020) (collecting cases).

In applying *Tinker,* it is not necessary that a disruption actually occurred.  Instead, a court must "evaluate the circumstances to determine if the school's forecast of substantial disruption was reasonable." *Barr,* 538 F.3d at 565.  Such decisions are usually "focused on whether the banned conduct would likely trigger disturbances such as those experienced in the past." *Id.*  The 6th Circuit in *Barr* ultimately found that graffiti, parent calls and parent visits to school, fights, truancy, and a feeling of "intensity" at the school all attributed to racial tensions made forecasts that displays of the Confederate flag would lead to disruption reasonable.  The Court contrasted that to *Tinker,* in which there was no evidence of disturbances that had occurred or that would allow a reasonable

forecast of one.

### B.      The law applied to this case.

The Hat in the present case is like the armbands in *Tinker,* the T-shirt in *Defoe,* the T-shirt in *Nuxoll-Zamecnik,* and the T-shirt in *N.J.* The *Tinker* standard applies, and the Hat is protected speech unless Defendants present facts that might reasonably have led school authorities to forecast substantial disruption of or material interference with school authorities or the invasion of the rights of others.  It is not enough for Defendants to have a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint, or an undifferentiated fear or apprehension of disturbance.

Defendants have failed to present any such facts.  Leffel testified at deposition that students were not to wear hats with "vulgar wording, inappropriate pictures, logos not appropriate for school."  Leffel Depo., p. 8, ll. 5-7.  She said C.S.'s Hat was not allowed "because it was a weapon and we were in a school setting, that it was not appropriate." *Id.,* p. 10, ll. 22-23.  Leffel identified this as the Hat:



*Id.,* p. 14 and Exhibit 2.  Her explanation of why the Hat was not appropriate was, "Well, it has a weapon on it, and the phrase, 'Come and take it.'  I took that as threatening."  *Id.,* p. 15, ll. 1-2.  By way of elaboration, Leffel said, "The phrase itself seems like it's trying to incite someone to come and have an altercation to take a weapon."  *Id.,* ll. 4-5. She admitted, however, that she did not believe C.S. actually had a weapon at school.  *Id.,* ll. 6-11.

Leffel continued, "[W]e're in an elementary school setting and it is a gun-free zone.  And I didn't feel that any type of weapons are appropriate in the school setting or anything that suggests violence. Guns often suggest violence.  And so that was my reasoning."  *Id.,* p. 16,

ll. 1-5.  Later, she deposed, "Yeah, I – from my own perspective … I feel

there is no appropriate pictures of weapons that would be appropriate

in the school setting at any time."  *Id.,* p. 22, ll. 1-3.

The extent of the disruption Leffel forecasted was minimal:

Q:  Did you think that the image of a rifle on the hat would
cause any kind of disruption in the school?
A:  I felt it could, yes.
Q:  And kind of disruption did you think it would cause?
A:  Fear.
Q:  Fear among?
A:  Students.
…
Q: Any other kind of disruption you thought might occur other
than fear among students?
A:  I felt staff would be very uncomfortable with it as well.
Q:  And how did you think that discomfort would manifest
itself?
A:  Well, they would communicate to me that that was – if it
wasn't addressed, I know staff would have reached out to
notify me that we had a student wearing that and it did not
fall within our dress code policy.
…
Q:  [I]s there any other way that you thought that allowing
C.S. to wear the hat would cause a disruption?
A:  Other than inciting fear?
Q:  Yes.
A:  I can't speak for what might have happened.
Q:  the phrase "Come and take it," did you think that that
might cause a disruption?
A:  Possibly.
Q:  And what kind of disruption did you think it might cause?
A:  Again, I would only theorizing [sic] about what could have

happened.  But we have young – young kids who can be very
impetuous and could perceive that as a dare to try and take
the hat off her:

*Id.,* pp. 23-25.

What Leffel described, of course, is merely a generalized desire to
avoid unpleasantness and an undifferentiated fear – exactly what
*Tinker* instructs is ***not*** a valid basis for censoring speech.  She admits
that she is only speculating on what might have happened.  She does
not actually have any facts to support a reasonable forecast.  She only
guessed.  She also admitted that at the time she was not making any
forecasts or even theorizing.  *Id.,* p. 26 ("If I sat down and thought
through the whole – again, at that moment, I wasn't theorizing.  I was
looking at what was in front of me.")

There was no forecast in the present case, let alone a factual basis
on which Leffel could have reasonably made a forecast.  Because
Defendants are unable to substantiate a forecast, the *Tinker* standard
requires ruling in favor of C.S.

Leffel deposed that some students at RKES had previously been
in the Oxford school district, a district that had experienced a school
shooting.  *Id.,* p. 24.  She said she had conversations with those students'

parents, and some students were receiving counseling and social work support. *Id.* That is, some students had concerns about the shooting **at Oxford**, and for that reason Leffel "didn't feel [the Hat] was appropriate." *Id.*

An argument nearly identical to Leffel's argument has been considered and rejected. *Schoenecker v. Koopman,* 349 F.Supp.3d 745 (E.D. Wis. 2018). In *Schoenecker,* a student was disciplined for wearing T-shirts to school that depicted various firearms and other weapons. 349 F.Supp. 3d at 747. The shirts made some teachers "uncomfortable and concerned about school safety, especially because the [student] wore the shirts shortly after the shooting at Marjory Stoneman Douglas High School in Parkland, Florida." 349 F.Supp. 3d at 752-753. In granting an injunction against the school officials, the Court said:

> As far as the record reveals, no students felt threatened by the plaintiff's shirts. Yes, some students were concerned about school shootings in general, but no evidence suggests that the plaintiff's shirts contributed to any student's anxiety. ***The evidence is that the actual school shooting in Parkland, Florida was what prompted the students' concerns***. The defendant tells us that the plaintiff's shirts made some staff members uncomfortable and concerned about school safety, but there is no evidence that any staff member's ability to provide instruction to students was affected. Moreover, the staff members' reaction to the shirts seems unreasonable, as none of the shirts promote gun violence.

349 F.Supp.3d at 753 [emphasis supplied].

In the present case, Leffel's comment was that some students were concerned about an ***actual*** <u>school shooting in Oxford.  She deposed that</u> ***no*** <u>students expressed concern about C.S.'s Hat.  Leffel Depo., p. 23.</u> <u>And, like the T-shirts in *Schoenecker*, C.S.'s Hat bore an image of a rifle</u> <u>in a non-violent manner, without promotion of gun violence.</u>

Leffel also deposed that no weapons could ever be depicted on any clothing at any time for any reason:

> Q:  And then let me ask you about how the policy would apply generally.  I don't want to put words in your mouth.  But I understand what you've said is that any clothing depicting a weapon would not be allowed;  is that correct?
> A:  Correct.
> Q:  So it wouldn't really matter the nature of the weapon or how it was displayed or anything like that?
> A:  Correct.

*Id.,* p. 27, ll. 2-9. Under Leffel's interpretation, therefore, even a hat depicting the Michigan state seal or the Michigan state flag would be banned:



The image in the center of the seal is a man with his right hand raised up and his left hand holding a long gun. MCL § 2.22 ("man...sinister arm with gun stock resting"). For that matter, Leffel's interpretation would ban display of the Michigan state flag anywhere on school property.

The Hat is an obvious replica of the "Gonzalez Flag," from the first land battle in the Texas Revolution against Mexico:

 

The Gonzalez Flag is a prominent part of American history.   It symbolizes Texans' refusal to return a cannon to the Mexican government during the revolution.[2]   The version with the modern sporting rifle instead of the cannon first appeared in the 1990s.[3]   The phrase "come and take it," which dates back to 480 B.C. and the Battle of Thermopylae,[4] is a common slogan in support of the right to keep and bear arms.   Michigan rock star Ted Nugent, known for his strong stand in favor of the Second Amendment, released a track "Come and Take it"

---

[2] https://en.wikipedia.org/wiki/Come_and_take_it (Last viewed April 17, 2023).
[3] *Id.*
[4] *Id.*

on his *Detroit Muscle* album.[5]

C.S.'s use of the symbol on the Hat she wore to school that day is nothing more than her showing support for the Constitution and the Second Amendment. And the First Amendment protects her right to express her support for the Second Amendment.

## Conclusion

C.S. has shown that there are no genuine issues of material fact and she is entitled to judgment as a matter of law. She requests a declaration that Defendants' preventing her from wearing the Hat violated her First Amendment rights, an injunction preventing Defendants from preventing her from wearing clothing depicting firearms in a non-violent, non-threatening manner, and nominal damages.  If this Motion is granted, C.S. shall file a motion for costs and fees pursuant to 42 U.S.C. § 1988.

Respectfully submitted:

/s/ John R. Monroe
John R. Monroe
John Monroe Law, P.C.
156 Robert Jones Road
Dawsonville, GA  30534
(678) 362-7650

---

[5] *Id.*

jrm@johnmonroelaw.com
Georgia State Bar No. 516193

/s/ Michael F. Smith
Michael F. Smith
The Smith Appellate Law Firm
1717 Pennsylvania Ave. NW, Ste 1025
Washington, DC  20006
(202) 454-2860

Michigan Office:
24405 Gratiot Ave.
Eastpointe, MI  48021

**Attorneys for Plaintiff**

Date:  April 21, 2023