UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| C.S. by her Next Friend, ADAM STROUB, )<br><br>Plaintiff,<br><br>v<br><br>CRAIG MCCRUMB, Individually and in his)<br>official capacity as Superintendent of Durand)<br>Area Schools and AMY LEFFEL,<br>Individually and in her official capacity as<br>Principal of Robert Kerr Elementary School<br>And MICHAEL PAPANEK Individually<br>and in his official capacity as On Track<br>Coach of Robert Kerr Elementary School,<br><br>Defendants. | Case No.: 4:22-cv-10993-TGB-EAS<br><br>HON. TERRENCE G. BERG |

JOHN ROBERT MONROE
Attorney for Plaintiff
156 Robert Jones Road
Dawsonville, GA 30534
678-362-7650

MICHAEL F. SMITH (P49472)
Co-counsel for Plaintiff
24405 Gratiot Avenue
Eastpointe, MI 48021
(202) 454-2860

GREGORY W. MAIR (P67465)
DANIEL J. LOBELLO (P81069)
Attorneys for Defendants
300 St. Andrews Road, Suite 302
Saginaw, Michigan  48638
(989) 790-0960

---

## **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

NOW COME, Defendants, CRAIG McCRUMB, AMY LEFFEL, and MICHAEL PAPANEK, by and through their attorneys, DANIEL J. LoBELLO and for their Motion for Summary Judgment pursuant to F.R.C.P 56 state the following:

1. That the Plaintiff filed her Complaint alleging violations of the First and Fourteenth Amendments against the Defendants.

2. That the events giving rise to the Complaint involved the Plaintiff wearing a hat on "hat day" during the Great Kindness Challenge, a school sponsored event.

3. That "the Hat" depicted a white star, an M16/Armalite Rifle ("AR"), and the phrase, "Come and Take it."

4. That on the date in question, the Plaintiff wore the hat to school and was asked to remove same and place it in her locker—no discipline resulted.

5. That the Hat depicted violence themes contrary to the School's dress code.

6. That the Hat in question is not pure speech protected by the First

2

Amendment.

7.     That the Hat was worn during a school sponsored event such that the School has a right to restrict speech that would undermine or distract from the educational environment.

8.     That the School's dress code policy is not unconstitutionally vague on its face or as-applied.

9.     That the School did not violate the Plaintiff's due process rights since there is no evidence that a fundamental right was violated, the Plaintiff was not denied notice or a hearing, and the Defendant's conduct was not arbitrary and capricious.

10.    That even if this Honorable Court was to find that some violation occurred, the Defendants are entitled to Qualified Immunity.

11.    That, pursuant to Local Court Rule motion practice, Defendants sought concurrence from Plaintiff's counsel in the relief sought by the instant Motion and same was declined.

12.    That the Defendants have prepared a Brief in support of the present Motion and hereby adopt and incorporate the facts and arguments contained therein as if fully restated word-for-word herein.

WHEREFORE, Defendants, CRAIG MCCRUMB, AMY LEFFEL, MICHAEL PAPANEK, respectfully request that this Honorable Court GRANT

their Motion for Summary Judgment and dismiss the Plaintiff's Complaint with prejudice and in its entirety, together with any other relief that this Honorable Court may deem fair, just and in good conscience.

Respectfully submitted,

/s/ DANIEL J. LoBELLO
GREGORY W. MAIR (P67465)
DANIEL J. LoBELLO (P81069)
Attorneys for Defendants

Date: April 24, 2023

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send confirmation of such filing to the following:

| | |
|---|---|
| John Monroe | jrm@johnmonrowlaw.com |
| Michael F. Smith | smith@smithpllc.com |
| Gregory W. Mair | gregmair@owdpc.com |
| | dmcclure@owdpc.com |
| | jmconnolly@owdpc.com |
| | sheryl@owdpc.com |
| Daniel J. LoBello | dan@owdpc.com |

Respectfully submitted,

Date:  April 24, 2023

/s/DANIEL J. LOBELLO (P81069)
Attorney for Defendants
300 St. Andrews Road, Suite 302
Saginaw, Michigan  48638
gmair@owdpc.com
dlobello@owdpc.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| C.S. by her Next Friend, ADAM STROUB, )<br><br>      Plaintiff,<br>v<br><br>CRAIG MCCRUMB, Individually and in his)<br>official capacity as Superintendent of Durand)<br>Area Schools and AMY LEFFEL,<br>Individually and in her official capacity as<br>Principal of Robert Kerr Elementary School )<br>And MICHAEL PAPANEK Individually<br>and in his official capacity as On Track<br>Coach of Robert Kerr Elementary School,<br><br>      Defendants. | Case No.:  4:22-cv-10993-TGB-EAS<br>)<br>) HON. TERRENCE G. BERG<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

JOHN ROBERT MONROE
Attorney for Plaintiff
156 Robert Jones Road
Dawsonville, GA 30534
678-362-7650

_____

MICHAEL F. SMITH (P49472)
Co-counsel for Plaintiff
24405 Gratiot Avenue
Eastpointe, MI  48021
(202) 454-2860

_____

GREGORY W. MAIR (P67465)
DANIEL J. LOBELLO (P81069)
Attorneys for Defendants
300 St. Andrews Road, Suite 302
Saginaw, Michigan  48638
(989) 790-0960

_____

## **DEFENDANTS' BRIEF IN SUPPORT OF SUMMARY JUDGMENT**

PREPARED BY:
DANIEL J. LoBELLO (P81069)
Attorney for Defendant
300 St. Andrews Road, Suite 302
Saginaw, MI  48638
989-790-0960/dlobello@owdpc.com

# TABLE OF CONTENTS

Page

Index of Authorities ................................................................iii

Questions Presented

Statement Of Controlling Or Most Appropriate Authority For Relief Requested ...1

Introduction ...........................................................................3

Statement Of Facts ..................................................................4

Law And Argument ..................................................................9
I.  The Hat Is Not Pure Speech ...............................................9
II. The School Has The Right To Restrict School Sponsored Speech ...........11
III. The School's Dress Code Policy Is Not Unconstitutionally Vague ..........15
IV. The Plaintiff Fails To State A Claim For Violation Of Her Due Process
    Rights Under The Fourteenth Amendment .....................................19
V. Mr. McCrumb, Ms. Leffel, and Mr. Papanek are entitled to Qualified
    Immunity ....................................................................22

Conclusion ............................................................................26

## **INDEX OF AUTHORITIES**

<u>**Cases**</u>                                                                                                   <u>**Pages**</u>

*Bethel Sch. Dist. No. 403 v. Fraser,*
     478 U.S. 675, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986)  ...................17, 25

*Blau v. Fort Thomas Public School Dist.,*
     401 F. 3d 381 (6th Cir. 2005)  ........................................9, 11, 13, 20, 21

*Boroff v. Van Wert City Bd. of Educ.,*
     220 F. 3d 465 (6th Cir. 2000)  .....................................................12

*Copeland v. Machulis,*
     57 F.3d 476 (6th Cir., 1995)  .......................................................1

*Cox v. Louisiana,*
     1965 Sup. Ct. Rev. 1, 32  ..........................................................18

*Curry ex rel Curry v. Hensiner,*
     513 F. 3d 570 (6th Cir. 2008)  ..............................................11, 12, 13

*Curry ex. rel. Curry v. School Dist. of the City of Saginaw,*
     452 F. Supp 2d 723, 742 (6th Cir. 2006)  .......................................23

*Dunigan v. Noble,* 390 F.3d 486 (6th Cir. 2004)  ......................................2

*Edwards v. South Carolina,*
     372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963) .............................18

*Evans-Marshall v. Bd. of Educ.,*
     428 F. 3d 223 (6th Cir. 2005)  .....................................................13

*Garner v. Louisiana,*
     368 U.S. 157, 200, 202, 82 S.Ct. 248, 7 L.Ed.2d 207 (1961) ................18

*Green Party of Tenn v. Hargett,*
     700 F. 3d 816 (6th Cir. 2012) ........................................................15

*Harlow v. Fitzgerald,*
     547 u.s. 800, 818, 102 s.Ct. 2727, 73 L.Ed.2d 396 (1982) ...................22

*Hazelwood Sch. Dist. v. Kuhlmeier,*
     484 U.S. 260 108 S. Ct. 56 (1988) ..............................11, 12, 13, 14, 25

*Hill v. Colorado,*
     530 U.S. 703 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000) ........................17

*Ison v. Madison Local School Dist. Bd. of Ed.,*
     3F.4th 887 (6th Cir. 2021) ............................................................17

*Johnson v. Morales,*
     946 F.3d 911 (6th Cir. 2020) ........................................................17

*Keen v. Helson,*
     930 F.3d 799 (6th Cir. 2019) .........................................................16

*Mahanoy Area Sch. Dist. v. B.L. ex rel. Levy,*
     __ U.S. __, 141 S. Ct. 2038, 2045m 210 L.Ed.2d 403 (2021) ...............25

*McLean v. 988011 Ontario Ltd.,*
     224 F.3d 797 (6th Cir. 2000) ..........................................................2

*N.J. by next friend Jacob v. Sonnabend,*
     536 F. Supp. 3d 392 (E.D. Wisc., May 3, 2021) .......................23, 24, 25

*Poling v. Murphy,*
     872 F. 2d 757 (6th Cir. 1989) ........................................................14

*San Antonio Indep. Sch. Dist. v. Rodriguez,*
     411 U.S. 1 (1973) ......................................................................13

*Saucier v. Katz,*
     533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) ................23

*Scott v. Harris*,
     550 U.S. 372, (2007) ...............................................................2

*Solomon v. Auburn Hills Police Dept.,*
     389 F.3d 167, 172 (6th Cir. 2004) ...........................................22, 23

*Spence v. State of Wash.,*
     418 U.S. 405 (1974) ...............................................................10

*Tinker v. Des Moines Independent Community School Dist,*
     393 U.S. 503 (1969) ...........................9, 11, 12, 13, 23, 24, 25

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.,*
     455 U.S. 489 (102 S. Ct. 1186, 71 L.Ed. 2d 362 (1982) .....................15

*Wis. Cent. Ltd. v. United States,*
     201 L.Ed. 2d 490, 138 S. Ct. 2067 (2018) ..................................15, 16

## **Court Rules**

Fed. R. Civ. P. 56(a) ..................................................................1

Fed. R. Civ. P. 56(c)(1) ..............................................................1

# QUESTIONS PRESENTED

I.   WHERE A STUDENT WEARS CLOTHING WITHOUT AN INTENTION TO CONVEY THE DISPLAYED MESSAGE, DOES THE EXPRESSION AMOUNT TO PURE SPEECH?

   Plaintiff would answer, "No."
   Defendants would answer, "Yes."
   The United States District Court would answer___.

II.  WHERE A STUDENT WEARS CLOTHING IN VIOLATION OF A SCHOOL'S DRESS CODE DURING A SCHOOL SPONSORED EVENT, DOES THE SCHOOL HAVE THE RIGHT TO RESTRICT SPEECH FOR A LEGITIMATE PEDAGOGICAL PURPOSE?

   Plaintiff would answer, "No."
   Defendants would answer, "Yes."
   The United States District Court would answer___.

III. DOES A SCHOOL DRESS CODE NEED TO BE WRITTEN AKIN TO A CRIMINAL CODE IN ORDER TO GIVE FAIR NOTICE OF PROHIBITED CONDUCT?

   Plaintiff would answer, "Yes."
   Defendants would answer, "No."
   The United States District Court would answer___.__

IV.  IN THE ABSENCE OF ANY ALLEGATIONS OR EVIDENCE ESTABLISHING A FUNDAMENTAL RIGHT, LACK OF NOTICE OR HEARING, AND ARBITRARY AND CAPRICIOUS CONDUCT, CAN A PLAINTIFF ESTABLISH A VIOLATION OF DUE PROCESS UNDER THE FOURTEENTH AMENDMENT?

   Plaintiff would answer, "No."
   Defendants would answer, "Yes."
   The United States District Court would answer___.

V.    WHERE THE RIGHT OF A STUDENT TO WHERE A HAT DEPICTING A FIREARM DURING A SCHOOL SPONSORED EVENT IS NOT CLEARLY ESTABLISHED, CAN A PLAINTIFF OVERCOME QUALIFIED IMMUNITY?

Plaintiff would answer, "No."
Defendants would answer, "Yes."
The United States District Court would answer____.

## <u>STATEMENT OF CONTROLLING OR MOST APPROPRIATE</u><br><u>AUTHORITY FOR RELIEF REQUESTED</u>

Under Fed. R. Civ. P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by:"

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476, 478-479 (6th Cir., 1995), the Court discussed the parties' burden of proof in deciding a motion for summary judgment:

> [t]he moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. *The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.*

(internal citations and quotations omitted) (emphasis added).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable

1

inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  However, the Court need not blindly adopt a non-moving party's version of the facts.  As the U.S. Supreme Court has stated:

> [w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Scott v. Harris*, 550 U.S. 372, 380 (2007).  Stated another way:

> [the Court] must determine not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it upon whom the *onus* of proof is imposed.

> *Dunigan v. Noble*, 390 F.3d 486, 492 (6th Cir. 2004) (emphasis in original)

(internal citations and quotations omitted).

## **INTRODUCTION**

This First and Fourteenth Amendment case arises out of the Plaintiff's minor ("C.S.") wearing a hat to school as part of a "dress-up day" during the "Great Kindness Challenge" a week-long, school-sponsored event. "The Hat" in question is black, baseball-style cap with white lettering / picturing that contains a white star, a picture of an M16 or ArmaLite Rifle ("AR") and the words "COME AND TAKE IT" below the rifle. *See Photo of Hat, Exhibit 1*. The words are provocative especially against the backdrop of uninformed elementary aged students.

Nevertheless, Plaintiff alleges that C.S.'s wearing of "the Hat" amounts to pure speech protected by the First Amendment, and the school violated her rights by asking C.S. to remove the Hat and place same in her locker.  The Plaintiff further alleges that the School's dress code policy prohibiting students from wearing clothing that depicts violent themes / weapons is unconstitutionally vague, and C.S. was denied due process for lack of objective criteria to determine what clothing is prohibited. Contrary to these allegations, C.S. never expressed any intention to wear the Hat as a Pro-Second Amendment message. In addition, the School had the right to restrict school-sponsored speech that they reasonably believed would disrupt the educational environment. Moreover, C.S. does not identify or allege any facts regarding the fundamental right that she alleges to have been violated, or a lack of notice and hearing to support a procedural or substantive due process claim.  Still,

3

even if this Honorable Court finds that some violation had occurred, the School via its administrators and staff, is entitled to qualified immunity. For these reasons, and those stated further below, Summary Judgment is appropriate for the School.

## **STATEMENT OF FACTS**

### **C.S.**

By way of background, C.S. was a third (3rd) grade student at Robert Kerr Elementary School at the time of this incident. C.S. has an Individualized Education Plan due to a diagnosis of Autism. *See Deposition of Adam Stroub, Exhibit 2, pg. 7.* Prior to and at the time of this incident, C.S. did not have a history of disciplinary issues at school, she is otherwise a straight "A" student, and there have not been any negative reports about C.S. to her parents from the school prior to or following this incident. *See Exhibit 2, pg. 14.* C.S.'s parents are Adam Stroub and Jessica Linfield. *See Exhibit 2, pg. 6,7.*

### **Student Handbook / Dress Code**

Before the start of each school year, the School reviews its Handbook for each building i.e. elementary, middle, and high school. *See Deposition of Amy Leffel, Exhibit 3, pg. 17.* Typically, the review is done by the building-level principal and submitted to the Board of Education for Approval. *See Exhibit 3, pg. 17.* However, leading up to the 2021/2022 school year, Ms. Leffel had just been hired as the Robert Kerr Elementary School Principal, and she believed that the handbook for that year

was already in place when she accepted her new position. *See Exhibit 3, pg. 17.* Within the handbook for 2021/2022, the School has a dress code to keep students safe and to prevent distractions from the learning environment. *See Handbook, Exhibit 4, pg. 14.* In the Handbook, students are not permitted to wear hats except for outdoor recess. In addition, student clothing "must not be offensive in any way and the building principal/staff has the right to decide what is offensive, but some examples are: words/ slogans that advertise illegal substances, words/ slogans that are racially or religiously offensive, violence themes, vulgar or sexual innuendo, etc." *See Exhibit 4, pg. 14.*

Leading up to the events that give rise to this Complaint, Mr. Stroub and Ms. Linfield never attended any board meetings to challenge the dress code policy in place in 2021/ 2022. *See Exhibit 2, pg. 10.* Mr. Stroub has never read the handbook or the dress code policy, but Ms. Linfield states that she had reviewed it. *See Deposition of Jessica Linfield, Exhibit 5, pg. 9.*

**February 17, 2022**

The incident giving rise to the present Complaint occurred on February 17, 2022. *See Complaint, Exhibit 6; Answer Exhibit 7.* At that time, the School conducted a week-long event for students called the Great Kindness Challenge. *See RK Newsletter, Exhibit 8.* During the week, the school sponsored different activities

where students were encouraged to dress-up on and complete a Great Kindness

check list which they could exchange for a small prize:

## The Great Kindness Challenge

The Great Kindness Challenge is one week dedicated to being extra kind to those around you. Taking extra thought in your actions and thinking about the difference a culture of kindness and compassion in our school can make! Our school will participate this week by having several Kindness dress-up days that students may participate in along with completing a Great Kindness Challenge checklist!

All students will receive The Great Kindness Challenge checklist and will be encouraged to complete as many acts of kindness as possible. Checklists will be kept here at school in your child's classroom. When your child completes the checklist, they may return it to their teacher by February 18th for a small prize. Students' names may also be called on the announcements for a job well done in bringing extra kindness to our school!

*See Exhibit 8, pg. 2.*

The day in question was "Dress Up-Wear a Hat Day" in which students could

wear a hat of their choosing throughout the day. *See Exhibit 8, pg. 1.*  Normally,

students are only allowed to wear hats during recess time and hat day was a special

occasion. *See Exhibit 4, pg. 14.*  C.S.'s mother stated that there was a pile of hats at

their home, and C.S. picked what she wanted to wear. *See Exhibit 5, pg. 8.*  When

asked why C.S. picked the Hat, Ms. Linfield believed it was because C.S. had given

the Hat to her father, Adam Stroub, as a birthday present. *See Exhibit 5, pg. 8.* C.S.

said that she picked the hat because it made her feel safe, and because it was her

dad's hat. *See Deposition of C.S., Exhibit 9, pg.7.*

When she arrived at school, C.S. went to her locker which is located close to Mr. Papanek's office.[1] *See Deposition of Michael Papanek, Exhibit 10, pg. 5,6.* C.S. peaked into Mr. Papanek's office to say "hi," and Mr. Papanek noticed C.S.'s hat with a gun on it. *See Exhibit 10, pg. 6-7.* After C.S. went to class, Mr. Papanek went to Principal Amy Leffel's office to inform her about the hat, and discuss what, if anything, should be done. *See Exhibit 8, pg. 9-10.* Mr. Papanek described the hat which Ms. Leffel understood to have a picture of a gun. *See Exhibit 3, pg. 10-11.* Ms. Leffel believed that the depiction of a weapon with the phrase, "COME AND TAKE IT" was provocative, threatening and may incite an altercation or disruption to the educational environment. *See Exhibit 3, pg. 15.* She also believed that the depictions on the Hat were against the School dress code which prohibited the display of violent themes. *See Exhibit 3, pg. 16.*

In the background of this incident, Durand Area Schools had absorbed several students from Oxford Area School District who moved to the area following the school shooting that occurred on November 30, 2021. *See Exhibit 3, pg. 24.* These students were receiving counseling, social work, and other supports through the school. *See Exhibit 3, pg. 24.* With this in mind, Ms. Leffel also believed that the

---

[1] Mr. Papanek is the On Track Coach at Robert Kerr Elementary, and C.S. would often stop by his office in the morning with other students to say "hi." *See Exhibit 10, pg. 5,6.*

Hat might cause fear and disruption among the students and their rights to a free and appropriate public education. *See Exhibit 4, pg. 23.* Ms. Leffel and Mr. Papanek discussed what should be done, and the consensus was for Mr. Papanek to call home and see if another hat could be brought by C.S.'s parents. *See Exhibit 3, pg. 9; Exhibit 10, pg. 11.*

When Mr. Papanek reached C.S.'s parents, he first spoke with Ms. Linfield who handed the phone to Mr. Stroub. *See Exhibit 10, pg. 9.* Mr. Papanek explained that the Hat was inappropriate for school and asked if he could bring another hat for C.S. to wear. *See Exhibit 10, pg. 11.* Mr. Stroub declined and said, "no one better lay a hand on her hat." *See Exhibit 10, pg. 12.* From there, Mr. Papanek and Ms. Leffel went to C.S.'s classroom, called her into the hallway, asked her to put her the Hat in her locker which she did without incident. She then returned to class. *See Exhibit 3, pg. 12.* After, Ms. Leffel called Mr. Stroub to discuss the matter leaving a voicemail message. *See Emails, February 17, 2022, Exhibit 11.*

After school, C.S. returned home, and Mr. Stroub sent an email to Ms. Leffel confirming that C.S. was told to put the hat in her locker. *See Exhibit 11.* Ms. Leffel responded by stating that the hat depicted a weapon which was inappropriate for students to wear in a school setting and ran afoul of the student handbook. *See Exhibit 11.* Thereafter, Mr. Stroub and/or Ms. Linfield did not communicate further

with the school regarding the incident. *See Exhibit 2, pg. 19.* Likewise, C.S.'s parents did not attend any board meetings to challenge the dress code. *See Exhibit 2, pg. 19, 37.* More importantly, C.S. did not receive any discipline because of the incident. *See Exhibit 2, pg. 19.*

## LAW AND ARGUMENT

### I.   THE HAT IS NOT PURE SPEECH

Historically, the wearing of clothing for the purpose of expressing certain views is the type of symbolic act that is within the Free Speech Clause of the First Amendment. *See Tinker v. Des Moines Independent Community School Dist.* 393 U.S. 503, 506 (1969). Speech of this nature or "pure speech" is entitled to comprehensive protection under the First Amendment. *See Tinker,* 393 U.S. at 506. Conversely, a generalized or vague desire to express "middle-school" individuality, the length of skirts, type of clothing, hairstyle, or deportment does not rise to the level of First Amendment protection. *Id.* at 507-508; *see also Blau v. Fort Thomas Public School Dist.,* 401 F. 3d 381,389 (6th Cir. 2005).

In this case, the Complaint, filed by C.S.'s father, touts the alleged attempt by C.S. to wear the Hat as a message of the right to keep and bear arms. *See Exhibit 6.* While the Complaint goes into great detail regarding the significance of the "white or Gonzales star," the firearm, and the expression "come and take it," shown on the

Hat there is nothing expressly stated on the hat pertaining to the right to keep and bear arms. *See Exhibit 1; see also Exhibit 4, pg. 3, par. 16-28.* Although Mr. Stroub believes that each of the symbols on the Hat are clear in this regard, there is no evidence of a great likelihood the message would be understood by those who viewed it. *See Spence v. State of Wash.*, 418 U.S. 405,410-411 (1974).

Still, even if these symbols were commonly understood, C.S., not her father, had no intent to wear the hat to express her support for the Second Amendment. On that point, C.S. testified:

Q:     Why did you pick the hat?

A:     Because it made me feel safe.

Q:     Okay. Is that because it's your dad's hat?

A:     Yeah; yes.

*See Exhibit 9, pg.7.*

In that connection, when C.S. was asked what she liked to do for fun, she made no mention of shooting, hunting, or any other activity involving firearms. *See Exhibit 9, pg. 9-10.* Even C.S.'s mother believed that she wore that Hat because she gave it to her father as a birthday gift. *See Exhibit 5, pg. 8.*

While the Hat or the symbols displayed upon it, do not need to be a narrow, succinctly articulable message to fall within constitutional protection, there must be something more than a vague desire for expression of a particularized message to

fall within First Amendment protection.   *See Blau*, 401 F. 3d at 389-391.

Accordingly, the Plaintiff has not identified any particularized message that she

intended to convey except the vague message that she loves her father and that she

felt "safe."  The Hat is not pure speech.

## II.   THE SCHOOL HAS THE RIGHT TO RESTRICT SCHOOL SPONSORED SPEECH

In order to determine whether said constitutional right was violated, we must

first decide the framework under which C.S.'s speech should be analyzed.   The

Sixth Circuit's analysis in *Curry ex rel Curry v. Hensiner* is instructive:

> If the expression was private expression, which just happened to occur
> at school, we look to *Tinker v. Des Moines Indep. Cmty. Sch. Dist.,* 393
> U.S. 503, 509 (1969) (noting that private expression may be restricted
> only upon a showing that such expression "would substantially
> interfere with the work of the school or impinge upon the rights of other
> students").   However, when the expression is school-sponsored speech,
> such as a school newspaper, or speech made as part of a school's
> curriculum, schools are afforded greater latitude to restrict the speech.
> *Hazelwood Sch. Dist. v. Kuhlmeier,* 484 U.S. 260, 273, 108 S.Ct. 562
> (1988) ("Educators do not offend the First Amendment by exercising
> editorial control over the style and content of student speech in school-
> sponsored expressive activities so long as their actions are reasonably
> related to legitimate pedagogical concerns.").

513 F. 3d 570,576-577 (6th Cir. 2008).

The Supreme Court has drawn a distinction between "personal expression that

happens to occur on school premises" and expressive activities that are "sponsored"

by the school and "may fairly be characterized as part of the school curriculum...."

*Hazelwood,* 484 U.S. at 271, 108 S.Ct. at 569–570. Speech sponsored by the school is subject to "greater control" by school authorities than speech not so sponsored, because educators have a legitimate interest in assuring that participants in the sponsored activity "learn whatever lessons the activity is designed to teach...." *Id.* As long as the actions of the educators are "reasonably related to legitimate pedagogical concerns," therefore, the *Hazelwood* Court held, as we have seen, that "educators do not offend the First Amendment by exercising editorial control over the style and content of student speech in school-sponsored expressive activities...." *Curry,* 513 F. 3d at 578 (citations omitted).

Expressive activities made as part of the school curriculum call for a *Hazelwood* analysis, while the high standard of *Tinker* is reserved for when the "problem involves direct, primary First Amendment rights akin to 'pure speech.' " *Boroff v. Van Wert City Bd. of Educ.,* 220 F.3d 465, 468 (6th Cir.2000) (quoting *Tinker,* 393 U.S. at 508, 89 S.Ct. 733). According to the Supreme Court, the *Hazelwood* standard applies when students, parents, and members of the public might reasonably perceive the expression to bear the imprimatur of the school. These activities may fairly be characterized as part of the school curriculum, whether or not they occur in a traditional classroom setting, so long as they are supervised by faculty members and designed to impart particular knowledge or skills to student

participants and audiences.  *Curry*, 513 F. 3d 578-579 (quoting *Hazelwood*, 484 U.S. at 271).

Local school officials are best situated to determine what is appropriate for children in school, and constitutional claims have consistently been given a less rigorous review in school settings. *Blau*, 401 F.3d at 393 ("The Court has repeatedly emphasized the need for affirming the comprehensive authority of the States and of school officials, consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools.") (quoting *Tinker*, 393 U.S. at 507, 89 S.Ct. 733). The *Blau* court went on to state that "in the First Amendment arena and other arenas as well, the Supreme Court thus has frequently emphasized that public schools have considerable latitude in fashioning rules that further their educational mission and in developing a reasonable fit between the ends and means of their policies." *Id.* " 'The very complexity of the problems of ... managing a statewide public school system suggests that there will be more than one constitutionally permissible method of solving them.' " *Evans–Marshall v. Bd. of Educ.*, 428 F.3d 223, 237 (6th Cir.2005) (Sutton, J., concurring) (quoting *San Antonio Indep. Sch. Dist. v. Rodriquez*, 411 U.S. 1, 42 (1973)).  It is often the case that "the determination of what manner of speech in the classroom ... is inappropriate properly rests with the school board rather than with the federal courts." *Id.* (quoting *Hazelwood*, 484 U.S. at 267, 108 S.Ct. 562).

In this case, there is no dispute that Great Kindness Challenge and "wear a hat day" was a school sponsored event occurring during the school day. As such, the *Hazelwood* analysis applies, and the School had a right to restrict C.S.'s speech only if it was reasonably related to a legitimate pedagogical purpose. *Hazelwood,* 484 U.S. at 273, 108 S.Ct. 562. Under that analysis, "the universe of legitimate pedagogical concerns is by no means confined to the academic...." *Poling v. Murphy,* 872 F.2d 757, 762 (6th Cir.1989).762 (teaching a student civility toward others is a legitimate pedagogical concern).

Taking the evidence in the light most favorable to the Plaintiff and assuming that she intended to convey a message of support for the right to keep and bear arms, the School had legitimate pedagogical concerns by C.S. continuing to wear the Hat. Primarily, Principal Leffel considered the image of the gun on the Hat to promote violence themes which ran afoul of the School's dress code. In addition, Principal Leffel believed that the phrase "come and take it" was inciteful such that it invited an altercation. More simply, Principal Leffel felt that eight (8) and nine (9) year old third (3rd) grade students might view the Hat as an invitation or dare to try and take the Hat from C.S. The words are provocative, especially against the backdrop of an elementary setting with curious youth.

If that was not enough, there were students in the building who had moved from Oxford Schools whose friends, family, or other people that they had known

were just been involved in a devastating school shooting three (3) months before this incident occurred. All of this against the backdrop of a week where students were encouraged to promote kindness, Ms. Leffel's decision to ask C.S. to place the Hat in her locker in an effort to prevent fear or disruption among the students was reasonably related to several legitimate pedagogical concerns as outlined above. Accordingly, C.S.'s First Amendment rights were not infringed.

## III. THE SCHOOL'S DRESS CODE POLICY IS NOT UNCONSTITUTIONALLY VAGUE

The Complaint alleges that the School's dress code policy is unconstitutionally vague since the School's determination of whether clothing is "offensive" is decided on a case-by-case basis. The Plaintiff does not specify whether she is asserting a facial or as applied challenge to the dress code, and there are no allegations that specifically support either claim. Nevertheless, in the context of a statute, same can be found to be impermissibly vague on its face if a plaintiff demonstrates that the law is impermissibly vague in *all* of its applications." *Green Party of Tenn. v. Hargett, 700 F.3d 816, 825 (6th Cir. 2012)* (emphasis added) (quoting *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 497, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982)). Federal courts read words in a statute based on their ordinary meaning at the time of a statute's enactment. *Wis. Cent. Ltd. v. United States*, 201 L.Ed.2d 490, 138 S. Ct. 2067 (2018) Contemporaneous

dictionaries "are the best" starting place for interpreting words. *Keen v. Helson*, 930 F.3d 799, 802–03 (6th Cir. 2019); *see also Wis. Cent. Ltd.*, 138 S. Ct. at 2071 (relying on dictionary definitions to begin interpreting a statute). The Court must also consider the placement of the words in the overall statutory scheme. *Keen*, 930 F.3d at 803 ("the structure and wording of other parts of a statute can help clarify the meaning of an isolated term.") (citation omitted); *see also Wis. Cent. Ltd.*, 138 S. Ct. at 2071 ("The broader statutory context points to the same conclusion the immediate text suggests.").

To sustain a facial challenge, the Plaintiff must show that the Principal or building staff can never determine that a student's clothing is "offensive." However, the Plaintiff does not allege any issue with the construction of the dress code policy, and the Complaint does not allege that the dress code policy involves some type of viewpoint discrimination. Thus, it appears that her challenge is to the dress code policy "as applied."

On that point, a statute [dress code] is unconstitutionally vague as applied if it fails to provide people of ordinary intelligence a reasonable opportunity to

understand what conduct it prohibits.[2]  Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Johnson v. Morales*, 946 F,3d 911, 929 (6th Cir. 2020) (quoting *Hill v. Colorado*, 530 U.S. 703, 732, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000)).

In this case, the Complaint does not allege any facts to support that the language of the dress code fails to give an ordinary person reasonable notice of what clothing is prohibited.  In any event, a statute is sufficiently definite if its meaning can be "fairly ascertained by reference to judicial interpretations, the common law, dictionaries, treatises, or the commonly accepted meanings of words." *Hill v. Colorado*, 530 U.S. 703, 732, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000)).  Despite the Plaintiff's contention, the dress code does not need to be of "perfect clarity or precise guidance" to be upheld.  *See e.g. Ison v. Madison Local School Dist. Bd. of Ed.*, 3 F.4th 887, 897 (6th Cir. 2021).

---

[2] We have recognized that "maintaining security and order in the schools requires a certain degree of flexibility in school disciplinary procedures, and we have respected the value of preserving the informality of the student-teacher relationship."  Given the school's need to be able to impose disciplinary sanctions for a wide range of unanticipated conduct disruptive of the educational process, the school disciplinary rules need not be as detailed as a criminal code which imposes criminal sanctions. *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 686, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986).

With that in mind, Principal Leffel testified that this was the first instance where a student had worn clothing depicting weapons or violence themes. *See Exhibit 4, pg. 22.* Aside from the other considerations underlining her decision, Principal Leffel believed that the depiction of a gun promoted violence and provocation contrary to the dress code. Nevertheless, whether the hat contained a gun, cannon, samurai sword, or other instrumentality of violence, the Plaintiff and her parents cannot establish that they were ill-informed or that the dress code policy was arbitrarily enforced.[3] More specifically, the dress code policy expressly states that "we [the school] may call home for a change if your child's clothing does not meet this code."[4] *See Exhibit 4, pg. 14.* In line with that provision, Ms. Leffel and Mr. Papanek attempted to have Mr. Stroub bring another hat for C.S. to wear, but he refused.

---

[3] Mr. Stroub admits that the historical citations in the Complaint all involve battles or war which he agrees are violent in nature. *See Exhibit 3, pg. 34.* He further agrees that clothing which distracts from student's learning should be prohibited. *See Exhibit 3, pg. 21.*

[4] Where First Amendment interests are affected, a precise statute 'evincing a legislative judgment that certain specific conduct be . . . proscribed,' *Edwards v. South Carolina,* 372 U.S. 229, 236, 83 S.Ct. 680, 684, 9 L.Ed.2d 697 (1963), assures us that the legislature has focused on the First Amendment interests and determined that other governmental policies compel regulation. See Kalven, The Concept of the Public Forum: *Cox v. Louisiana,* 1965 Sup. Ct. Rev. 1, 32; *Garner v. Louisiana,* 368 U.S. 157, 200, 202, 82 S.Ct. 248, 271—272, 7 L.Ed.2d 207 (1961) (Harlan, J., concurring in judgment).

As such, Ms. Leffel and Mr. Papanek asked C.S. to put the hat in her locker until the end of the day. While a student being asked to place the offending clothing in his or her locker is not defined in the dress code, the decision to ask C.S. to place the hat in her locker was rationally related to ensuring compliance with the dress code policy and avoiding a disruption among the students.

## IV.  THE PLAINTIFF FAILS TO STATE A CLAIM FOR VIOLATION OF HER DUE PROCESS RIGHTS UNDER THE FOURTEENTH AMENDMENT

The Complaint alleges, in a conclusory manner, that C.S. was denied due process under the Fourteenth Amendment for the School's alleged failure to provide objective criteria for knowing what clothing is prohibited. The Complaint does not specify whether the Plaintiff is alleging that her procedural or substantive due process rights were violated. In that regard, as it relates to procedural due process, the Complaint does not allege the lack of notice or a pre- and post-deprivation hearing in connection with this incident. Nevertheless, as it relates to substantive due process, the Plaintiff does not identify the alleged fundamental right that was violated, or that the School's actions were arbitrary and capricious.

Again, assuming that the Complaint is interpreted liberally, the analysis begins by the proper characterization of the individual's asserted right. Governmental actions that infringe a fundamental right receive strict scrutiny.

Otherwise, they receive rational-basis review, which requires them only to be "rationally related to a legitimate state interest." *Id.* at 575. Blau, 401 F.3d at 393 (citations omitted).

In *Blau v. Fort Thomas Public School Dist.*, the plaintiff's father filed suit against Fort Thomas Schools for revising the dress code to prohibit the students from wearing blue jeans. *See id.* at 386. The plaintiff testified that by wearing blue-jeans she did not wish to convey a particular message and simply wanted to wear clothing that looks nice on her. *Id.*

In analyzing the plaintiff's due process claim under the Fourteenth Amendment, the Sixth Circuit reasoned that the list of fundamental rights "is short,", it does not include the [wearing of dungarees] and "the Supreme Court has expressed very little interest in expanding" the list... Whether it be the right to marry, the right to have children, the right to direct the educational upbringing of one's child, the right to marital privacy, the right to use contraception, the right to bodily integrity or the right to abortion... "By extending constitutional protection to an asserted right or liberty interest [the court], to a great extent place[s] the matter outside the arena of public opinion and legislative action," *Id.* at 393-394 (emphasis in original)(citations omitted).

The question then becomes whether a plaintiff has offered evidence or explanation as to why a school [board] is ill-equipped to handle the question of

whether [blue jeans] ought to be worn in public schools. *Id.* at 394. So too, the test for identifying a new fundamental right—those rights that are "deeply rooted in this Nation's history and tradition," or so "implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed," does not help [the plaintiff's] position. *Id.* When comparing a middle-school student's desire to wear certain clothes at school to that of forcing someone to "lay bare the body" to a surgical procedure, the Sixth Circuit found that wearing blue jeans and a forced surgical procedure were not one in the same. Rational basis applied. *Id.* at 395.

Assumingly, the fundamental right at issue here is C.S.'s desire to wear a hat on a special "dress up day" offered by the School. Again, the rationale behind C.S. wearing the Hat was not to convey any particular message, and she stated to have worn the hat because it made her feel safe, and that it was her father's hat. Compared to *Blau*, this Honorable Court can employ a similar analysis to find that an elementary school student's desire to wear her father's hat on a special dress up day is not recognized as a fundamental right. Likewise, even though baseball caps have been around since the mid-1800's, there are no allegations to demonstrate that baseball caps are "implicit in the concept of ordered liberty." Taken further, it is anticipated that the Plaintiff may argue that the message "Come and Take It" employs connotations of historical significance, and the phrase is mutually exclusive of the clothing upon which it is printed. However, the right to keep and bear arms

is grossly different from the right to wear clothing displaying this phrase, when there is no intent to convey the message displayed. Here, C.S. admits that she wore the Hat because it made her feel safe and because she loves her father, not to convey a pro-Second Amendment message. As such, the School's prohibition of the Hat, like Ms. Blau's blue jeans, does not receive strict scrutiny. Therefore, the School asking C.S. to place the Hat in her locker is rationally related to the School's interest in prevent disruption to its learning environment. Paramount to this discussion, C.S. received no discipline and, therefore, no due process violation can be shown.

## V.     Mr. McCrumb, Ms. Leffel, and Mr. Papanek are entitled to Qualified Immunity

Qualified immunity is an affirmative defense that protects government actors performing discretionary functions from liability for civil damages when their conduct does "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The Supreme Court has held that a claim of qualified immunity must be examined in two steps: "first, a court must consider whether the facts, viewed in the light most favorable to the plaintiff, 'show the officer's conduct violated a constitutional right,' " and "the court must then decide 'whether the right was clearly established.' " *Solomon v. Auburn Hills Police*

*Dept.,* 389 F.3d 167, 172 (6th Cir.2004) (quoting *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).

Although the Sixth Circuit has not directly addressed qualified immunity in First Amendment school cases, it has found the defense to be available where constitutional precedent has not been a model of clarity. The Fifth Circuit has held that a school administrator was entitled to qualified immunity despite a finding of a First Amendment speech violation because of "the unsettled nature of First Amendment law as applied to off-campus student speech inadvertently brought on campus by others." *Curry ex. rel. Curry v. School Dist. or the City of Saginaw*, 452 F. Supp 2d 723,742 (6th Cir 2006) (citations omitted).

For the reasons stated *supra*, the School has not violated C.S.'s constitutional rights. However, if the Court should find differently, then the Plaintiff must show that the right of a student to wear a hat because it made her feel safe and for love of her father containing pictures of a star, a rifle, and the phrase "come and take it" is clearly established. On that point, *Tinker* and its progeny do not address the circumstances of this case clearly enough to give notice to the School or its administrators that the right was clearly established. The only case that the undersigned is aware of that would give some guidance to the School stems from the United States District Court for the Eastern District of Wisconsin *N.J. by next friend*

*Jacob v. Sonnabend*, 536 F. Supp. 3d 392 (E.D. Wisc., May 3, 2021). However, that decision actually supports the school's regulation of speech.

It was not until the 7th Circuit Court of Appeals reversed and remanded *Sonnabend*, on June 15, 2022, after this incident, that the School might have had any guidance regarding the rights at issue in this case. Still, *Sonnabend* differs from the fact from the facts here as the student in *Sonnabend* had been warned several times that he could not wear clothing depicting firearms. *See* 37 F. 4th 412, 417 (7th Cir. 2022). In addition, it was established through the record evidence that N.J. had worn clothing to express his enjoyment of hunting and target shooting, and his ownership of the shirts to show support of the Second Amendment. *See Sonnabend*, F. 4th at 417. The 7th Circuit remanded the case following the District Court's decision finding that *Tinker*, rather the First Amendment forum doctrine applied. *Id.* at 424. In so reasoning, the 7th Circuit determined that the forum doctrine did not resolve the issues in N.J.'s case, and since the facts of the case did not fit within any of the enumerated exceptions to *Tinker*, the case was remanded to the District Court to

consider N.J.'s case in line with the substantial-disruption standard .[5]

Conversely, the facts of this case differ from *Sonnabend* in that C.S. did not wear, a Hat that she owned, for the purpose of supporting the Second Amendment.[6] Instead, unlike *Sonnabend*, C.S. testified that she wore her father's Hat because it made her feel safe, and for love of her father.  Moreover, the Hat was only allowed as part of a special "dress-up day" a school sponsored event rather than during a regular school day.  In light of this evidence, *Hazelwood* rather than *Tinker* applies, and the School does not have the requisite notice that the right to wear the Hat was clearly established.

---

[5] Since *Tinker* the Court has identified "three specific categories of student speech that schools may regulate" regardless of whether the circumstances satisfy *Tinker*'s "substantial disruption" standard. *Mahanoy Area Sch. Dist. v. B.L. ex rel. Levy*, —— U.S. ——, 141 S. Ct. 2038, 2045, 210 L.Ed.2d 403 (2021). The first and perhaps most obvious category is "indecent[,] ... vulgar[,] and lewd speech." *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 685, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986). *Fraser* concerned a high-school student who was suspended for delivering a "sexually explicit monologue" to an "unsuspecting audience of teenage students" at a school assembly. *Id.*  The Court held that school officials acted well within their broad authority, recognized in *Tinker*, to discipline the student for his lewd speech because it was "wholly inconsistent with the fundamental values of public school education." *Id.* at 685–86, 106 S.Ct. 3159 (quotation marks omitted). The Court did not apply *Tinker*'s "substantial disruption" standard to this category of student speech. It was enough that allowing the student's sexually explicit speech to go unpunished "would undermine the school's basic educational mission." *Id.* at 685, 106 S.Ct. 3159.

[6] *C.f. Sonnabend*, 536 F. Supp at 399 (In this case, by contrast, the images of firearms and the accompanying text are intended to convey the wearers' positive attitude toward firearms and the right to possess them.)

## **CONCLUSION**

WHEREFORE, Defendants, CRAIG MCCRUMB, AMY LEFFEL, MICHAEL PAPANEK, respectfully request that this Honorable Court GRANT their Motion for Summary Judgment and dismiss the Plaintiff's Complaint with prejudice and in its entirety, together with any other relief that this Honorable Court may deem fair, just and in good conscience.

Respectfully submitted,

Date: April 24,2023

/s/ DANIEL J. LoBELLO
GREGORY W. MAIR (P67465)
DANIEL J. LoBELLO (P81069)
Attorneys for Defendants
300 St. Andrews Road, Suite 302
Saginaw, Michigan 48638
gregmair@owdpc.com
dlobello@owdpc.com

26

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send confirmation of such filing to the following:

| | |
|---|---|
| John Monroe | jrm@johnmonrowlaw.com |
| Michael F. Smith | smith@smithpllc.com |
| Gregory W. Mair | gregmair@owdpc.com |
| | dmcclure@owdpc.com |
| | jmconnolly@owdpc.com |
| | sheryl@owdpc.com |
| Daniel J. LoBello | dan@owdpc.com |

Respectfully submitted,

Date: April 24, 2023

/s/DANIEL J. LOBELLO (P81069)
Attorney for Defendants
300 St. Andrews Road, Suite 302
Saginaw, Michigan  48638
dlobello@owdpc.com