UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| C.S. by her Next Friend, ADAM STROUB, )<br><br>         Plaintiff,<br>v<br><br>CRAIG MCCRUMB, Individually and in his)<br>official capacity as Superintendent of Durand)<br>Area Schools and AMY LEFFEL,<br>Individually and in her official capacity as<br>Principal of Robert Kerr Elementary School<br>And MICHAEL PAPANEK Individually<br>and in his official capacity as On Track<br>Coach of Robert Kerr Elementary School,<br><br>         Defendants. | Case No.: 4:22-cv-10993-TGB-EAS<br><br>HON. TERRENCE G. BERG |

JOHN ROBERT MONROE
Attorney for Plaintiff
156 Robert Jones Road
Dawsonville, GA 30534
678-362-7650

MICHAEL F. SMITH (P49472)
Co-counsel for Plaintiff
24405 Gratiot Avenue
Eastpointe, MI 48021
(202) 454-2860

GREGORY W. MAIR (P67465)
DANIEL J. LOBELLO (P81069)
Attorneys for Defendants
300 St. Andrews Road, Suite 302
Saginaw, Michigan 48638
(989) 790-0960

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

In response to Plaintiff's Motion for Summary Judgment under F.R.C.P 56, Defendants aver that the Plaintiff's Motion should be denied for the reasons stated in Defendants' Cross Motion for Summary Judgment and as stated in their Brief which accompanies the instant Response. *See* ECF 17.

WHEREFORE, Defendants, CRAIG MCCRUMB, AMY LEFFEL, MICHAEL PAPANEK, respectfully request that this Honorable Court DENY the Plaintiff's Motion for Summary Judgment in its entirety, together with any other relief that this Honorable Court may deem fair, just and in good conscience.

Respectfully submitted,

Date: May 12, 2023

/s/DANIEL J. LoBELLO
GREGORY W. MAIR (P67465)
DANIEL J. LoBELLO (P81069)
Attorneys for Defendants
300 St. Andrews Road, Suite 302
Saginaw, Michigan  48638
gregmair@owdpc.com
dlobello@owdpc.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| C.S. by her Next Friend, ADAM STROUB, | )Case No.: 4:22-cv-10993-TGB-EAS |
| | ) |
| Plaintiff, | ) HON. TERRENCE G. BERG |
| v | ) |
| | ) |
| CRAIG MCCRUMB, Individually and in his | ) |
| official capacity as Superintendent of Durand | ) |
| Area Schools and AMY LEFFEL, | ) |
| Individually and in her official capacity as | ) |
| Principal of Robert Kerr Elementary School | ) |
| And MICHAEL PAPANEK Individually | ) |
| and in his official capacity as On Track | ) |
| Coach of Robert Kerr Elementary School, | ) |
| | ) |
| Defendants. | ) |
| | ) |

JOHN ROBERT MONROE
Attorney for Plaintiff
156 Robert Jones Road
Dawsonville, GA 30534
678-362-7650

MICHAEL F. SMITH (P49472)
Co-counsel for Plaintiff
24405 Gratiot Avenue
Eastpointe, MI  48021
(202) 454-2860

GREGORY W. MAIR (P67465)
DANIEL J. LOBELLO (P81069)
Attorneys for Defendants
300 St. Andrews Road, Suite 302
Saginaw, Michigan  48638
(989) 790-0960

## **DEFENDANTS' BRIEF IN RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**PAGE**

Index of Authorities ……………………………………………………………iii

Counter Statement Of Questions Presented …………………………………………1

Statement Of Controlling Or Most Appropriate Authority ………………………..2

Introduction ………………………………………………………………………..4

Response To Plaintiff's Statement Of Material Facts And Defendants' Counter-Statement Of Material Facts ………………………………………………..6

Law And Argument …………………………………………………………………10
    I.      No Violation Of The Plaintiff's First Amendment Rights …………..10
          A.     No Intent To Convey A Particular Message …………………10
          B.     Greater Control Over School Sponsored Speech ……………14
          C.     Tinker …………………………………………………………..17

Conclusion ………………………………………………………………………19

# INDEX OF AUTHORITIES

**Cases**                                                                          **Pages**

*Barr v. Lofton,*
    538 F.3d 555, 562 (6th Cir 2008) ……………………………………..15, 18

*Baxter v. Vigo County School Corp.,*
    26 F.3d 728, 736–38 (7th Cir.1994) …………………………………….13

*Bethel Sch. Dist. No.403 v. Fraser,*
    478 U.S. 675, 682, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986) ………………14

*Blau v. Fort Thomas Public School Dist.,*
    401 F. 3d 381,389 (6th Cir. 2005) …………………………………..11, 12

*Boroff v. Van Wert City Bd. of Educ.,*
    220 F.3d 465, 468 (6th Cir.2000) ………………………………………15

*Brandt v. Board of Educ. of City of Chicago,*
    480 F.3d 460, 465 (7th Cir. 2007) ……………………………………12, 13

*Copeland v. Machulis,*
    57 F.3d 476, 478-479 (6th Cir. 1995) ………………………………………2

*Curry v. Hensiner,*
    513 F.3d 570 (6th Cir. 2008) …………………………………………..15, 16

*Dunigan v. Noble,*
    390 F.3d 486, 492 (6th Cir. 2004) ………………………………………3

*Hazelwood Sch. Dist. v. Kuhlmeier,*
    484 U.S. 260, 273, 108 S.Ct. 562 (1988) ………4, 10, 12, 13, 14, 15, 16, 17

*McLean v. 988011 Ontario Ltd.,*
    224 F.3d 797, 800 (6th Cir. 2000) ……………………………………..3

*Morse v. Frederick,*
    551 U.S. 393, 127 S.Ct. 2618, 2622, 168 L.Ed.2d 290 (2007) ……………14

*Muller v. Jefferson Lighthouse School,*
    98 F.3d 1530, 1538–39 (7th Cir.1996)  ……………………………………13

*N.J. v. Sonnabend,*
    37 F.4ᵗʰ 412 (7th Cir. 2022)  …………………………………………..11

*Nuxoll v. Indian Prarie School District #204,*
    523 F. 3d 668 (7th Cir 2008)  ………………….………………………..11

*Scott v. Harris,*
    550 U.S. 372, 380 (2007) …………………….………………………….3

*Taft Broad. Co. v. United States,*
    929 F.2d 240, 248 (6th Cir. 1991)  …………………………………….4

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.,*
    393 U.S. 503, 509 (1969) ……………4, 5, 10, 11, 12, 14, 15, 16, 17, 18, 19

## Court Rules & Statutes

Fed. R. Civ. P. 56(a) …………………………………………………..2

Fed. R. Civ. P. 56(c)(1) ………………………………………………2

## **COUNTER STATEMENT OF QUESTIONS PRESENTED**

I.    Does a School have the right to control student speech where the display occurs as a result of a school-sponsored event, and the student has no intent to convey a particular message?

Plaintiff would answer, "No."

Defendants would answer, "Yes."

The United States District Court for the Eastern District of Michigan would answer:

## STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITY

Under Fed. R. Civ. P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by:"

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B)  showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476, 478-479 (6th Cir. 1995), the Court discussed the parties' burden of proof in deciding a motion for summary judgment:

> [t]he moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment.  *The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.*

(internal citations and quotations omitted) (emphasis added). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the Court need not blindly adopt a non-moving party's version of the facts. As the U.S. Supreme Court has stated:

> [w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Scott v. Harris*, 550 U.S. 372, 380 (2007). Stated another way:

> [the Court] must determine not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it upon whom the *onus* of proof is imposed.

*Dunigan v. Noble*, 390 F.3d 486, 492 (6th Cir. 2004) (emphasis in original) (internal citations and quotations omitted).

## **INTRODUCTION**

The parties agree that there is no genuine dispute of material fact by way of their cross-Motions for Summary Judgment. *See* ECF No. 17, Page ID# 280-318. Although the parties have filed cross-motions, the standard upon which the court evaluates the motions does not change. *See Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991).

With that in mind, the Plaintiff's Motion must be denied as it erroneously concludes that *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 509 (1969), controls over the present case. To that end, the Plaintiff does not assert any rationale as to why *Tinker* rather than *Hazelwood* should apply given that the circumstances of this case arise as a result of a school sponsored event "The Great Kindness Challenge." 484 U.S. 260, 273, 108 S.Ct. 562 (1988). Contrary to the Plaintiff's assertions, and by her own admissions, the Plaintiff did not have the intent to convey a particular message of support for the Second Amendment. As such, this case does not involve "pure speech" akin to *Tinker*. Instead, it is undisputed that the Plaintiff's wearing of "the Hat" occurs during a school-sponsored event in which the Defendants had greater latitude to control the style and content of the Plaintiff's speech so long as is its reasonably related to legitimate pedagogical concerns.

Assuming arguendo, that this Honorable Court finds differently, the Defendants actions are also justified under *Tinker* as the Defendants reasonably believed that Plaintiff's wearing of the Hat would materially disrupt the learning environment or violate the rights of other students.

Notwithstanding the foregoing, the Plaintiff's Motion is devoid of any argument regarding her claims of vagueness as it relates to enforcement of the school's dress code. Likewise, the Plaintiff has not made any argument concerning the alleged due process violation. As such, it appears that she has abandoned these claims for the purposes of Summary Judgment. Defendants adopt and incorporate their Motion for Summary Judgment and Brief in support as if fully restated herein. ECF No. 17, Page ID# 280-318. For the reasons stated in Defendants' Motion, and those described further below, the Plaintiff's Motion for Summary Judgment must be denied.

**RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS AND
DEFENDANTS' COUNTER-STATEMENT OF MATERIAL FACTS**

1.      Defendants admit the allegations in the instant paragraph.  Defendant's Fact

Appendix ("DFA") 1, 2

2.      Defendants admit the allegations in the instant paragraph. DFA 1,pg. 2.

3.      Defendants admit the allegations in the instant paragraph. DFA 1, pg. 1

4.      Defendants generally admit the allegations in the instant paragraph.  By way

of further response, "wear a hat day" was part of a week-long event entitled the

Great Kindness Challenge. DFA 3.  Students are generally not permitted to wear

hats unless during recess time. DFA 4, pg. 14.

5.      Defendants admit the allegations in the instant paragraph. DFA 1.

6.      Defendants generally admit the allegations in the instant paragraph. DFA 1,

Ex. 1.

7.      Defendants deny the allegations of the instant paragraph in the manner and

form stated.  In further response, Defendants deny that the images and words

displayed on the hat, whether taken together or separately, are "commonly" used to

support the right to keep and bear arms. DFA 5, par. 16-28.

8.      Defendants deny the allegations of the instant paragraph in the manner and

form stated.  In further response, Defendants deny that a white star and cannon are

the combination of images at issue in this case or that the Hat evinces any

particular specified relationship to the "Gonzales Flag."  See e.g., DFA 5, pg. 27-28.

9.     Defendants admits the allegations of the instant paragraph. DFA 6, pg. 5-6.

10.    Defendants admits the allegations of the instant paragraph and denies that the Plaintiff received any type of discipline in the present case. DFA, pg. 18.

11.    Defendants admit the allegations of the instant paragraph.

12.    Defendants admit the allegations of the instant paragraph.

13.    Defendants admit the allegations of the instant paragraph.

14.    Defendants admit the allegations of the instant paragraph.   In further response, Mr. McCrumb did not intervene in the course of action by the School regarding the Plaintiff's Hat. DFA 7, pg. 6-7.

15.    Defendants admit the allegations of the instant paragraph.

16.    Defendants admit the allegations of the instant paragraph.

17.    Defendants admit the allegations of the instant paragraph.

18.    Defendants admit the allegations of the instant paragraph.

19.    Defendants admit the allegations of the instant paragraph.

20.    Defendant admits the allegations of the instant paragraph.

21.    Defendants admit the allegations of the instant paragraph.   In further response, Ms. Leffel and Mr. Papanek testified that Mr. Papanek described the hat which Ms. Leffel understood to have a picture of a gun. *See Exhibit 3, pg. 10-11.*

Ms. Leffel believed that the depiction of a weapon with the phrase, "COME AND TAKE IT" was provocative, threatening and may incite an altercation or disruption to the educational environment. *DFA 8, pg. 15.* She also believed that the depictions on the Hat were against the School dress code which prohibited the display of violent themes. *DFA 8, pg. 16.* In the background of this incident, Durand Area Schools had absorbed several students from Oxford Area School District who moved to the area following the school shooting that occurred on November 30, 2021. *DFA 8, pg. 24.* These students were receiving counseling, social work, and other supports through the school. *See DFA 8, pg. 24.* Ms. Leffel also believed that the Hat might cause fear and disruption among the students and their rights to a free and appropriate public education. *DFA 8, pg. 23.* Ms. Leffel and Mr. Papanek discussed what should be done, and the consensus was for Mr. Papanek to call home and see if another hat could be brought by C.S.'s parents. *DFA 8, pg. pg. 9; DFA 6, pg. 11.*

22.   Defendant admits the allegations of the instant paragraph.

23.   Defendant admits the allegations of the instant paragraph.

24.   The incidents giving rise to this event occur during the Great Kindness Challenge, a school-sponsored event. DFA 3, DFA 5, pg. 20.

25.     The Plaintiff elected to wear the Hat because she loves her father and it made her feel safe.  Alternatively, the Plaintiff wore the Hat because she gave it to her father as a birthday present.  DFA 9, pg. 7, DFA 10, pg. 8.

## LAW AND ARGUMENT

## I.  NO VIOLATION OF THE PLAINTIFF'S FIRST AMENDMENT RIGHTS

The Hat in this case does not concern speech that is indecent, vulgar, lewd, or promoting illegal drug use.  Rather, the question turns on whether the Plaintiff's wearing of the Hat amounts to "black armbands" in *Tinker* or school-sponsored speech in *Hazelwood*.  Defendants posit that *Hazelwood* is the most appropriate standard to apply in this case.  To that end, the undisputed facts indicate that the only message intended to be conveyed by the Plaintiff was a general love for her father and a feeling of safety.  Likewise, there is no dispute that the "Great Kindness Challenge" and "wear a hat day" was part of a school sponsored event as admitted by the Plaintiff's father.

### A.  No Intent to Convey a Particular Message

Historically, the wearing of clothing for the purpose of expressing certain views is the type of symbolic act that is within the Free Speech Clause of the First Amendment.  *See Tinker v. Des Moines Independent Community School Dist.* 393 U.S. 503, 506 (1969).  Speech of this nature or "pure speech" is entitled to comprehensive protection under the First Amendment. *See Tinker,* 393 U.S. at 506. Conversely, a generalized or vague desire to express "middle-school" individuality, the length of skirts, type of clothing, hairstyle, or deportment does not rise to the

level of First Amendment protection. *Id.* at 507-508; *see also Blau v. Fort Thomas Public School Dist.*, 401 F. 3d 381,389 (6th Cir. 2005).

In the present case, the Plaintiff does not address why the Great Kindness Challenge and by extension "wear a hat day" is not a school sponsored event even though same was admitted by her father. It is further undisputed that students would not be allowed to wear hats during the school day, except during recess hours. Yet, the Plaintiff argues that the Hat in this case is akin to "black armbands," a "be happy, not gay" T-shirt, and a T-shirt depicting a firearm. *See Tinker*, 393 U.S. at 506, *Nuxoll v. Indian Prarie School District #204*, 523 F. 3d 668 (7th Cir 2008); *N.J. v. Sonnabend*, 37 F.4th 412 (7th Cir. 2022).

Assuming, momentarily, that the Plaintiff's speech was not school-sponsored, this case is distinguishable from the foregoing in that the Plaintiff did not wear the Hat to convey any particularized message. As such, *Tinker, Nuxoll,* and *Sonnabend* do not resolve the issue before the Court. In each of those cases, the circumstances were, by example, that "***the student wore_____ to promote the message of / support for _____***. Unlike this case, the foregoing decisions provide a logical "fill-in the blank" with the respect to the particularized protected speech at issue. However, in this case, the equation reads, " ***The Plaintiff wore*** <u>a hat with "a star," "a firearm," and "the phrase COME AND TAKE IT</u> ***to promote a message of*** <u>love for her father / feeling safe.</u>" DFA 9, pg. 7. The Plaintiff's

equation does not add up, and there is no evidence of intent to convey a particular message. On that point, the Plaintiff confuses the freedom of expression with constitutionally protected speech. Luckily, the Seventh Circuit and the Sixth Circuit have analyzed the distinct differences between protected speech and mere self-expression:

> Although freedom of speech and of the press—the relevant terms in the First Amendment—are often loosely paraphrased as "freedom of expression," and clothes are certainly a way in which people express themselves, clothing as such is not—not normally at any rate—constitutionally protected expression. *Tinker,* 393 U.S. at 507–08, 89 (1969); *Blau v. Fort Thomas Public School District,* 401 F.3d 381, 389 (6th Cir.2005) (12–year–old "Amanda Blau's desire to wear clothes she 'feel[s] good in,' as opposed to her desire to express 'any particular message' " held not to be protected speech). Self-expression is not to be equated to the expression of ideas or opinions and thus to participation in the intellectual marketplace. Nor is the kind of "message" that clothing normally sends—"I am rich," "I am sexy," "I have good taste," and so forth—intended to contribute to competition in that marketplace.

*Brandt v. Board of Educ. of City of Chicago*, 480 F.3d 460, 465 (7th Cir. 2007).

In light of the above, this Honorable Court need not reach the issue of whether *Tinker* or *Hazelwood* controls over the present case, since the Plaintiff cannot demonstrate that she engaged in protected speech. As a collateral consideration, the Seventh Circuit has paid particular credence to the age of the student and whether the student is mature enough to convey a message worthy of constitutional protection. The Seventh Circuit reasoned:

We have our doubts whether the constitutional privilege to engage in protest demonstrations in the name of free speech extends to eighth graders. The plaintiffs' lawyer told us at argument that the clause extends at least as far down the maturity ladder as a 10–year–old (a proposition in profound tension with *Muller by Muller v. Jefferson Lighthouse School,* 98 F.3d 1530, 1538–39 (7th Cir.1996), and *Baxter by Baxter v. Vigo County School Corp.,* 26 F.3d 728, 736–38 (7th Cir.1994), and cases cited there), and that the object of the protest is irrelevant. It could be, she acknowledged, a protest against the brand of ketchup served in the school cafeteria. She insists that the school's authority to prevent or punish such protests must be decided by a jury asked to strike the balance between free speech and school order. If she is right, then from now on public school policies and practices will be determined in this circuit by juries rather than by school authorities. Cf. *Hazelwood School Dist.,* 484 U.S. 260, 273, 108 S.Ct. 562 (1988).

But we need not go so far as to deny that eighth graders have *any* First Amendment rights, for it is plain that the school did not violate the amendment by attempting, albeit with distinctly limited success because of the decision of the Crisis Intervention Team, to exclude the Brandt T-shirt from the school. We must be precise about the right that the plaintiffs sought to vindicate by protesting. It is the right to an explanation by the school for how the election to pick an official eighth-grade T-shirt was conducted. We do not think eighth graders have such a right. For the school to hold an election for class T-shirt and rig the results, as the plaintiffs suspect happened, is probably not a recommended educational practice, but it is not an infringement of any legal right.

*Brandt*, 480 F.3d at 466.

Applied here, the Plaintiff is a third (3rd) grade student and by her own admission wore the hat to convey love for her father, not Second Amendment support. The Plaintiff does not cite a single piece of evidence in this case that expounds upon or explains that she wore the Hat in support of the Second

Amendment or the Constitution.   As such, the Plaintiff has not engaged in protected speech.

### B.   Greater Control over School Sponsored Speech

Assuming *arguendo* that this Honorable Court disagrees with the foregoing, the Supreme Court has made "clear that students do not 'shed their constitutional rights to freedom of speech or expression at the schoolhouse gate.' " *Morse v. Frederick,* 551 U.S. 393, 127 S.Ct. 2618, 2622, 168 L.Ed.2d 290 (2007) (quoting *Tinker,* 393 U.S. at 506, 89 S.Ct. 733).   "The constitutional rights of students in public school are not automatically coextensive with the rights of adults in other settings," *Bethel Sch. Dist. No. 403 v. Fraser,* 478 U.S. 675, 682, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986), and courts must apply the rights of students "in light of the special characteristics of the school environment." *Hazelwood Sch. Dist.* 484 U.S. at 266, (1988) (quoting *Tinker,* 393 U.S. at 506, 89 S.Ct. 733).

If the expression was private expression, which just happened to occur at school, we look to *Tinker v. Des Moines Indep. Cmty. Sch. Dist.,* 393 U.S. 503, 509 (1969) (noting that private expression may be restricted only upon a showing that such expression "would substantially interfere with the work of the school or impinge upon the rights of other students").   However, when the expression is school-sponsored speech, such as a school newspaper, or speech made as part of a school's curriculum, schools are afforded greater latitude to restrict the speech.

*Hazelwood Sch. Dist. v. Kuhlmeier,* 484 U.S. 260, 273, 108 S.Ct. 562 (1988) ("Educators do not offend the First Amendment by exercising editorial control over the style and content of student speech in school-sponsored expressive activities so long as their actions are reasonably related to legitimate pedagogical concerns."). *Barr v. Lofton,* 538 F.3d 555, 562 (6th Cir 2008).

Speech sponsored by the school is subject to "greater control" by school authorities than speech not so sponsored, because educators have a legitimate interest in assuring that participants in the sponsored activity "learn whatever lessons the activity is designed to teach...." *Id.* As long as the actions of the educators are "reasonably related to legitimate pedagogical concerns," therefore, the *Hazelwood* Court held, as we have seen, that "educators do not offend the First Amendment by exercising editorial control over the style and content of student speech in school-sponsored expressive activities...." *Curry,* 513 F. 3d at 578 (citations omitted).

Expressive activities made as part of the school curriculum call for a *Hazelwood* analysis, while the high standard of *Tinker* is reserved for when the "problem involves direct, primary First Amendment rights akin to 'pure speech.' " *Boroff v. Van Wert City Bd. of Educ.,* 220 F.3d 465, 468 (6th Cir.2000) (quoting *Tinker,* 393 U.S. at 508, 89 S.Ct. 733). According to the Supreme Court, the *Hazelwood* standard applies when students, parents, and members of the public

15

might reasonably perceive the expression to bear the imprimatur of the school. These activities may fairly be characterized as part of the school curriculum, whether or not they occur in a traditional classroom setting, so long as they are supervised by faculty members and designed to impart particular knowledge or skills to student participants and audiences. *Curry*, 513 F. 3d 578-579 (quoting *Hazelwood*, 484 U.S. at 271).

There is no dispute in this case that "wear a hat day" was a school-sponsored event. The Plaintiff does not oppose or even reference that fact in proceeding under *Tinker*. Notwithstanding, the Defendants had legitimate pedagogical concerns in that Ms. Leffel believed the depiction of a weapon with the phrase, "COME AND TAKE IT" was provocative, threatening and may incite an altercation or disruption to the educational environment. *See DFA 8, pg. 15*. She also believed that the depictions on the Hat were against the School dress code which prohibited the display of violent themes. *See DFA 8, pg. 16*.

In the background of this incident, Durand Area Schools had absorbed several students from Oxford Area School District who moved to the area following the school shooting that occurred on November 30, 2021. *See DFA 8, pg. 24*. These students were receiving counseling, social work, and other supports through the school. *See DFA 8, pg. 24*. With this in mind, Ms. Leffel also believed

that the Hat might cause fear and disruption among the students and their rights to a free and appropriate public education. *See DFA 8, pg. 23.* Likewise, given the age of the Plaintiff's class mates, Principal Leffel felt that eight (8) and nine (9) year old, third (3rd) grade students might view the Hat as an invitation or dare to try and take the Hat from C.S. Accordingly, under *Hazelwood*, the Defendants did not infringe on the Plaintiff's constitutional rights.

### C. TINKER

In the event that this Honorable Court finds that *Tinker*, rather than *Hazelwood* applies, the Defendant's actions were equally justified. "*Tinker* does not require disruption to have actually occurred." *Tinker, 393 U.S.* at 593. Rather than evaluating competing claims about whether disruption occurred in the past, we "must evaluate the circumstances to determine if [the school's] forecast of substantial disruption was reasonable." *Id.* The rationale for this standard lies in the fact that requiring evidence of disruption caused by the banned speech would place "school officials ... between the proverbial rock and hard place: either they allow disruption to occur, or they are guilty of a constitutional violation." *Id.* at 596. "Recognizing that the *Tinker* decision does not require that the banned form of expression itself actually have been the source of past disruptions, subsequent appellate court decisions considering school bans on expression have focused on

whether the banned conduct would likely trigger disturbances such as those experienced in the past." (citations omitted).   Our inquiry, then, is whether the school reasonably forecast that the [speech] would cause material and substantial disruption to schoolwork and school discipline.   *Barr*, 538 F. 3d at 565.

Applying *Tinker* to the present case, it is without question that several students at Robert Kerr Elementary migrated from Oxford Schools and were receiving counseling, therapy, or another supports offered by the School to cope with the Oxford School tragedy.   Even though the Plaintiff's wearing of the Hat did not cause an actual disruption, it was evident to Ms. Leffel that those students, if confronted with the  Plaintiff's Hat, might have been disturbed by the image of the firearm.   With that in mind, *Tinker* provides a school with the ability to restrict student speech where it would interfere with the rights of other students to be secure and left alone. *Tinker*, 393 U.S. at 513.

Indeed, the question arises once again as to whether a third (3rd) grade student would understand the pictures and phrases on the Plaintiff's hat.   As the Plaintiff suggests, the Hat depicts support for the Second Amendment and the Constitution.   However, the conflicting or differing interpretation by a third (3rd) grader could have been that the Plaintiff supported school shootings.   The actual result is unknown, but *Tinker* does not require an actual disruption to have occurred to justify a limitation of student speech.   Again, as stated above, Ms.

Leffel believed that the Hat would cause a substantial disruption, violate the rights of other students, or both and acted prevent either from occurring. *See DFA 8, pg. 23-24.* Each of these legitimate concerns justify the Defendant's restriction of student speech under *Tinker*, as well as the present case. As such, the Plaintiff's Constitutional rights were not violated.

**CONCLUSION**

WHEREFORE, Defendants, CRAIG MCCRUMB, AMY LEFFEL, MICHAEL PAPANEK, respectfully request that this Honorable Court DENY the Plaintiff's Motion for Summary Judgment in its entirety, together with any other relief that this Honorable Court may deem fair, just and in good conscience.

Respectfully submitted,

Date: May 12, 2023

/s/DANIEL J. LoBELLO
GREGORY W. MAIR (P67465)
DANIEL J. LoBELLO (P81069)
Attorneys for Defendants
300 St. Andrews Road, Suite 302
Saginaw, Michigan 48638
gregmair@owdpc.com
dlobello@owdpc.com

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send confirmation of such filing to the following:

| | |
|---|---|
| John Monroe | jrm@johnmonrowlaw.com |
| Michael F. Smith | smith@smithpllc.com |
| Gregory W. Mair | gregmair@owdpc.com |
| | dmcclure@owdpc.com |
| | jmconnolly@owdpc.com |
| | sheryl@owdpc.com |
| Daniel J. LoBello | dan@owdpc.com |

Respectfully submitted,

Date: May 12, 2023

/s/DANIEL J. LOBELLO (P81069)
Attorney for Defendants
300 St. Andrews Road, Suite 302
Saginaw, Michigan  48638
dlobello@owdpc.com