UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

C.S. by her Next Friend,
ADAM STROUB,                           Case No.: 4:22-cv-10993-TGB-EAS

   Plaintiff,                          Hon. Terrence G. Berg
v.                                     Mag. Judge Elizabeth A. Stafford

CRAIG MCCRUMB, et.al.,

   Defendants.

**PLAINTIFF'S REPLY IN SUPPORT OF HER
<u>MOTION FOR SUMMARY JUDGMENT</u>**

May 19, 2023

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

I. C.S.'s wearing of the Hat at "Hat Day" was not "School-Sponsored" speech as described in *Hazelwood* ........................................................................................... 1

II. Defendants did not Reasonably Forecast a Substantial Disruption ................... 4

III. Even under *Hazelwood* C.S. is entitled to summary judgment .......................... 5

Conclusion ..................................................................................................................... 7

# **TABLE OF AUTHORITIES**

Cases

*Griggs v. Fort Wayne Sch. Bd.*, 359 F. Supp. 2d 731, 740 (N.D. Ind. 2005) ............................................................................................ 2, 5, 6
*Hazelwood School District v. Kuhlmeier,* 484 U.S. 260 (1988) ................. 1
*Korwin v. Cotton,* 323 P.3d 1200, 1204 (Ariz. Ct. App. 2014) .................. 3
*Mahanoy Area School District v. B.L.,* 594 U.S. ___, 141 S.Ct. 2038, 210 L.Ed.2d 403 (2021) ............................................................................. 4
*N.J. v. Sonnabend,* 37 F.4th 412 (7th Cir. 2022) .................................... 3, 7
*Tinker v. Des Moines Indep. Comm. Sch. Dist.,* 393 U.S. 508, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969) ....................................................... 1, 3, 4, 7

## I.    C.S.'s wearing of the Hat at "Hat Day" was not "School-Sponsored" speech as described in *Hazelwood*

Defendants argue[1] that the standard in *Tinker v. Des Moines Indep. Comm. Sch. Dist.,* 393 U.S. 508, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969) does not apply to the present case because "Hat Day" was a "school sponsored activity."  For that reason, Defendants say, the present case must be resolved under the standard of *Hazelwood School District v. Kuhlmeier,* 484 U.S. 260 (1988).

Defendants fail to apply *Hazelwood*'s own test for what makes **speech** "school-sponsored." It is not, as Defendants imply, any **speech** that occurs during any activity which is encouraged by the school. After all, school attendance in general is encouraged by the school, and all **speech** that occurs while a student is attending school is not subject to *Hazelwood.* Defendants in essence attempt a rhetorical sleight-of-hand, arguing that *Hazelwood* applies where **speech** takes place at a "school-sponsored *event.*" Doc. 19 at 1, 4, 11 (emphasis added). To the contrary,

---

[1] Defendants' Brief [Doc. 19] in response to C.S.'s Motion for Summary Judgment includes several references to "Defendants' Fact Appendix ("DFA")."  C.S. has combed through the filings in this case and cannot find a document bears that name.  Neither can she correlate the DFA citations with documents in the record.

the relevant question is whether the student's **message** may reasonably be deemed "school sponsored." *Griggs v. Fort Wayne Sch. Bd.*, 359 F. Supp. 2d 731, 740 (N.D. Ind. 2005) (discussing "*Hazelwood*'s explicit distinction between **speech** 'that happens to occur on the school premises' and **speech** that one 'might reasonably perceive to bear the imprimatur of the school'"), quoting *Hazelwood*, 484 U.S. at 270-271 (emphasis added). *Hazelwood*

> …concerns educator's authority over school-sponsored publications, theatrical productions and other expressive activities that students, parents, and members of the public might reasonably perceive to bear the imprimatur of the school. These activities may fairly be characterized as part of the school curriculum, whether or not they occur in a traditional classroom setting, so long as they are supervised by faculty members and designed to impart particular knowledge or skills to student participants and audiences. Educators are entitled to exercise greater control over this second form of student expression to assure that participants learn whatever lessons the activity is designed to teach….[484 U.S. at 271].

Although Defendants lean heavily on their view that C.S.'s wearing of the Hat was a "school-sponsored activity," they make no effort to explain how students, parents, and members of the public would possibly perceive the message the Hat conveyed to bear the imprimatur of the school. Nor do they claim the wearing of the Hat was

"part of the school curriculum, supervised by faculty members and designed to impart particular knowledge or skills."[2]

Defendants are trying to make "hat day" out to be something other than what it was – a day when staff and students were allowed to wear hats of their own choosing to school. Indeed, the RKES newsletter listing the various dress-up days for the week for Thursday, February 17 said simply, "Dress Up – Wear a Hat Day," without indicating any pedagogical theme or lesson that hats needed to reflect. ECF 17-9, PID # 418. Where hundreds of RKES students wore a hat to school that day, Defendants do not say how anyone – student, parent, or member of the public – might perceive any one hat to bear the school's imprimatur. Such a conclusion is not defensible.

The 7th Circuit recently considered and rejected Defendants' argument in a very similar case. In *N.J. v. Sonnabend,* 37 F.4th 412 (7th Cir. 2022), the Court applied *Tinker* in a school T-shirt case where the

---

[2] Even if hat day could reasonably be deemed part of a pedagogical effort to teach "kindness," defendants' ban of the Hat is impermissible viewpoint discrimination. It elevates Leffel's view that "[g]uns often suggest violence," Doc. 15-2 (PFA), p. 96, over C.S.'s "support for the right of people to have guns." Doc. 20-1 (Declaration of C.S.), ¶ 6; *see also Korwin v. Cotton*, 323 P.3d 1200, 1204 (Ariz. Ct. App. 2014) (enjoining Phoenix regulation that barred bus-system advertisement containing a large red heart and urging marksmanship and firearm-safety training in part because "[a]n armed society is a polite society").

3

shirt contained images of weapons and text supporting the right to keep and bear arms.  Rejecting the application of *Hazelwood,* the Court said:

> Unlike the high-school student newspaper in [*Hazelwood*], nothing about A.L.'s T-shirt bears the imprimatur of his school.  No observer would construct the message on his T-shirt as school-sponsored or school-endorsed speech.  Rather, A.L.'s … T-shirt is materially indistinguishable from the black armbands in *Tinker.* It's an expression of his political opinion, just like the armbands expressed the student's opposition to the Vietnam War. *Tinker* is the controlling authority. [37 F.4th at 425].

So it is here. No reasonable person would construe the Hat as bearing RKES's imprimatur.

Because C.S.'s wearing of the Hat was not school-sponsored speech, as that term is used in *Hazelwood, Hazelwood* does not apply. The "default" student speech case is *Tinker.  Mahanoy Area School District v. B.L.,* 594 U.S. ___, 141 S.Ct. 2038, 210 L.Ed.2d 403 (2021).

## II.  Defendants did not Reasonably Forecast a Substantial Disruption

Under *Tinker*, student speech is protected unless school officials reasonably forecast a substantial disruption. Defendants here did not do so. They only have come up with undifferentiated claims that the Hat might have caused fear, but they have not been able to articulate how that might occur. Neither have they explained how unspecified fear

4

might lead to a substantial disruption. Instead, they only articulated a generalized preference that weapons not be displayed on clothing. But *Tinker* requires "more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint." 393 U.S. at 509. An "undifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression." *Id.* at 508.

### III. Even under *Hazelwood* C.S. is entitled to summary judgment

In *Griggs, supra*, high-school administrators in March 2003 barred a student from wearing a t-shirt with a large picture of an M16 rifle, along with "The Creed of a United States Marine," deeming it "not appropriate" for school given both the depiction of the gun and the creed's lines about shooting. 359 F. Supp. 2d at 734. A few days later they responded to his father's inquiry, stating the graphic of the gun "is inappropriate for the educational setting." *Id.* at 735. The court applied *Hazelwood* because (since-reversed) circuit precedent required it to. It found that the school's policy as applied to Grigg's shirt did not meet *Hazelwood* because the Board did not show that banning Grigg's shirt was reasonably related to any legitimate pedagogical interest. "While the Board certainly has an interest in preventing violence in its schools, it cannot merely incant 'Columbine' or '[a murder victim's name']' like a

5

magic spell allowing it to ban speech totally unrelated to those tragic incidents." *Id*. at 745. Accordingly, the court granted an injunction allowing Grigg to wear the shirt to school. *Id*. at 746.

The parallels between *Griggs* and this case are striking, and in each case, cut against Defendants:

- The *Griggs* principal had a "personal objection to guns" which "colored her first impressions." *Id*. at 744. And while "some viewers, depending on their general attitude toward guns, might have a visceral, negative reaction upon first seeing the M16…it only takes a few seconds of study to realize that the gun is placed in the context of a relatively benign message of support for the military." *Id*. As in this case, the school's failure to view the shirt in context "fatally weaken[ed] each of its arguments." *Id*.

- Concerns about Columbine and other school shootings, including the recent murder of a student, did not give the board a "legitimate pedagogical interest" in discouraging a "culture of violence," since there was no showing that banning Griggs' shirt had any "reasonable relation" to that interest. *Id*. at 744. Viewed in context, "no reasonable observer would think that [the shirt] related to Columbine or other school shootings in any way." *Id*.

- In *Griggs* the administrator's initial objection was only that the shirt was "inappropriate," and did not contain the "*post hoc* rationalizations their attorneys" offered in court as to school shootings, a student's recent murder, and violence in general. *Id*. at 745 fn.11. Here too, Leffel originally said merely that "weapons of any kind are not appropriate."

- Finally, *Griggs* applied *Hazelwood* only because then-binding 7th Circuit precedent required it to. But that

6

precedent has been overruled by *N.J.* so now the 7th Circuit, as well as the 6th Circuit, would apply *Tinker*, not *Hazelwood*, to a clothing message that was "not sponsored by the school (nor could it reasonably appear to be)".... 359 F. Supp. 2d at 739-740.

## Conclusion

Because this is a *Tinker* case and because Defendants did not reasonably forecast a substantial disruption, they violated C.S.'s First Amendment rights when they prohibited her from wearing the Hat.

Respectfully submitted the 19th Day of May, 2023

/s/ John R. Monroe
John R. Monroe
John Monroe Law, P.C.
156 Robert Jones Road
Dawsonville, GA 30534
(678) 362-7650
jrm@johnmonroelaw.com
Georgia State Bar No. 516193
Attorneys for Plaintiff

/s/ Michael F. Smith
Michael F. Smith
The Smith Appellate Law Firm
1717 Penn. Ave. NW, Ste. 1025
Washington, D.C. 20006
(202) 454-2860
Michigan Office:
24405 Gratiot Ave.
Eastpointe, MI 48021

7